522 So.2d 874 (1988)
Laurel D. SCHUTZ, Appellant,
v.
Richard R. SCHUTZ, Appellee.
Nos. 86-1756, 86-1757.
District Court of Appeal of Florida, Third District.
February 9, 1988.
Rehearing Denied April 25, 1988.
Elser & Samuels, Daniels & Hicks and Patrice A. Talisman, Miami, for appellant.
Marks, Aronovitz & Leinoff and Andrew M. Leinoff, Miami, for appellee.
Before SCHWARTZ, C.J., and HENDRY and HUBBART, JJ.
SCHWARTZ, Chief Judge.
This is an appeal by the custodian mother-former wife from a post-dissolution order on child support and visitation, which had been made necessary by the fallout from the appellant's assiduous and unfortunately largely successful efforts both to secrete physically the parties' two daughters from their father and to poison their hearts and minds against him.[1] None of the points asserted for reversal have any *875 merit. We find it appropriate to discuss only one: what we regard as the baseless claim that the requirement that she instruct the children to love and respect their father[2] violates her rights to free speech.
The only properly considered issue in this case concerns the best interests of the children. Our knowledge of the parent-child relationship reveals, and therefore our law says, that children are entitled to a warm and loving affinity with both their parents. Because of this fact, a custodian such as the appellant mother has an "affirmative obligation" to encourage and nurture the relationship between the children and the non-custodial parent. Gardner v. Gardner, 494 So.2d 500, 502 (Fla. 4th DCA 1986), appealed dismissed, 504 So.2d 767 (Fla. 1987); In re Adoption of Braithwaite, 409 So.2d 1178, 1180 (Fla. 5th DCA 1982). Goldenberg, Pity the Poor Child and the Practitioner: Handling Current Issues Concerning Parental Responsibility, Fla.B.J., Nov. 1987, at 45, correctly points out that:
In Gardner, the court underscored that a PRP [primary residential parent] cannot remain neutral with regard to contact between the child and the SRP [secondary residential parent]. The PRP must take measures to ensure that the child sees the other parent or face serious legal sanctions and possibly the loss of primary residence. [e.s.] (footnote omitted)[3]
See also In re S.D., 549 P.2d 1190, 1200-01 (Alaska 1976). The order in question  particularly that aspect to which the appellant most objects, the requirement that she attempt to raise her daughters' opinion of their father to one she herself does not hold  is in entire accordance with these principles and is therefore plainly substantively correct.
Nor, it should be unnecessary to say, is the mother "protected" by the first amendment from a requirement that she fulfil her legal obligation to undo the harm she had already caused and to vindicate the interests with which she should be most concerned  those of her daughters rather than her own personal ones. It is axiomatic that the mere fact that speech or associational activities are involved does not render words or conduct inviolate from governmental control in the name of the first amendment. Such rights are not "subject to analysis in terms of absolute[;] ... all basic rights of free speech are subject to reasonable regulation." State v. Scott, 678 S.W.2d 50, 52 (Tenn. 1984); Dickson v. Dickson, 12 Wash. App. 183, 186-189, 529 P.2d 476, 478-79 (1974), cert. denied, 423 U.S. 832, 96 S.Ct. 53, 46 L.Ed.2d 49 (1975); see United States v. Diapulse Corp. of America, 457 F.2d 25, 28 (2d Cir.1972) (correction of mislabeling required by Federal Food, Drug and Cosmetic Act not protected by first amendment); American Frozen Food Institute v. Mathews, 413 F. Supp. 548, 555 (D.D.C. 1976) (labeling requirements of Food and Drug Administration involve no prior restraint on first amendment rights), aff'd sub nom. American *876 Frozen Food Institute v. Califano, 555 F.2d 1059 (D.C. Cir.1977). Accordingly, various kinds of communication are subject to regulation or outright preclusion by governmental action when they run afoul of established principles of law or policy. Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982).[4]
As one might expect, since the welfare of children is the concern upon which the law places perhaps the greatest emphasis of all, this principle has been widely applied to bar reliance upon the first amendment by a parent whose otherwise protectable conduct runs counter to the best interests of his or her child. As the court said in Dickson, in upholding an order enjoining the father from making defamatory remarks about the mother:
[A]pplying the balancing test enunciated in Galella [v. Onassis, 353 F. Supp. 196 (S.D.N.Y. 1972), aff'd and modified, 487 F.2d 986 (2d Cir.1973)], interference with Mrs. Dickson's privacy and the children's well being outweighs Mr. Dickson's absolute exercise of his First Amendment rights of free speech and free exercise of religion.
12 Wash. App. at 188, 529 P.2d at 479; Fargnoli v. Faber, 105 A.D.2d 523, 525, 481 N.Y.S.2d 784, 787 (1984) (no first amendment violation to enjoin parent from disparaging communications with children's guardian), appeal dismissed, 65 N.Y.2d 631, 491 N.Y.S.2d 158, 480 N.E.2d 746 (1985); J.L.P.(H) v. D.J.P., 643 S.W.2d 865, 871-72 (Mo. Ct. App. 1982) (no first amendment violation to require limits on visitation in order to prevent exposing child to homosexuality); DeVita v. DeVita, 145 N.J. Super. 120, 125-128, 366 A.2d 1350, 1353-54 (App.Div. 1976) (no rights to privacy or free speech violated to restrict visitation from female companion spending night in father's home with children); In re B., 85 Misc.2d 515, 380 N.Y.S.2d 848, 857-60 (Sup.Ct. 1976) (no freedom of speech or association barriers to transfer of custody due to mother's homosexual relationship); see also Henley v. Rocket, 243 Ala. 172, 8 So.2d 852 (1942) (upholding injunction prohibiting association with another in domestic context); Stark v. Hamilton, 149 Ga. 227, 99 S.E. 861 (1918) (same); Ex parte Warfield, 40 Tex.Crim. 413, 50 S.W. 933 (1899) (same). These authorities control the present case.
If it is wrong falsely to shout fire in a crowded theater, Schenck v. United States, 249 U.S. 47, 39 S.Ct. 247, 63 L.Ed. 470 (1919), it is just as wrong for the appellant to refuse affirmatively to encourage the relationship between these children and this parent. Gardner, 494 So.2d at 500. The lower court properly ordered her to do so.
Affirmed.
HUBBART, J., concurs.
HENDRY, Judge, dissenting.
I respectfully dissent. By this appeal, the former wife challenges various portions of a post-dissolution of marriage final order regarding child support and visitation. Having carefully reviewed the record, briefs, and arguments of counsel for both parties, I find merit in the wife's contention that the trial court erred in requiring her to instruct the children to love and respect their father.
The parties, Laurel and Richard Schutz, were divorced in 1978. During the divorce, there was a great deal of animosity between the parties and these feelings persisted *877 when the order under review was entered. The wife was given custody of the couple's two children, Dee Britt and Brigette, but in the two years following the divorce, the husband saw the children regularly. In 1981, the wife and the children moved without notifying the husband and he did not see the children again until 1985. When the children finally saw their father, they were very hostile toward him, claiming they hated their father because he had abandoned them.
Subsequently, both husband and wife filed petitions for modification of the final judgment. After hearing the testimony of all the parties involved, the trial court found that the wife was responsible for the hostility the children felt toward their father. The court allowed the wife to continue as custodian of the children, but ordered her to do everything in her power to instruct the children to love and respect their father. The wife contends that this order constitutes a denial of her first amendment rights of freedom of speech and expression.
As the majority correctly states, Florida law directs a custodial parent to encourage visitation with the noncustodial parent. The custodial parent has an affirmative obligation to the noncustodial parent to "encourage and nurture the parent-child relationship." In Re Adoption of Braithwaite, 409 So.2d 1178, 1180 (Fla. 5th DCA 1982); Gardner v. Gardner, 494 So.2d 500, 502 (Fla. 4th DCA 1986), appeal dismissed, 504 So.2d 767 (Fla. 1987). In fulfilling his or her obligation to the noncustodial parent, the custodial parent should refrain from doing anything which would "undermine or starve the noncustodial parent's contacts and relationships with the child." Braithwaite, 409 So.2d at 1180 n. 4. Moreover, in addition to encouraging visitation, the custodial parent should take steps to ensure the children visit the noncustodial parent. Gardner, 494 So.2d at 502.
In my view, the trial court order in this case does more than direct the custodial parent to encourage visitation and nurture the relationship between the noncustodial parent and the child. The order obligates the wife `to do everything in her power to create in the children's minds loving, caring feelings toward their father.' By this order, the trial judge had sought to compel the wife to lessen the hostility she instilled in the children toward their father. The order, however, produces an impermissible result in that it compels the wife to exceed the legal duty to encourage visitation which she, as a custodial parent, owes the noncustodial parent. The language in the order requires the wife to express opinions she does not hold. This is an infringement on the wife's first amendment rights of freedom of speech and expression.
In West Virginia State Board of Education v. Barnette, 319 U.S. 624, 642, 63 S.Ct. 1178, 1187, 87 L.Ed. 1628, 1639 (1943), the United States Supreme Court held that no official can prescribe what opinions an individual may hold. The Court stated:
If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess by word or act their faith therein.
The Florida Supreme Court, relying on the Barnette holding, held that "the state may never force one to adopt or express a particular opinion." Coca-Cola Co., Foods Division v. State Dep't of Citrus, 406 So.2d 1079, 1087 (Fla. 1981). I believe the quoted language in the portion of the order in question has the effect of prescribing what opinions the wife must hold and express with regard to her former husband. This language infringes on the wife's freedom of speech and expression as guaranteed by the first amendment; it is improper and should be stricken. Accordingly, I would reverse.
NOTES
[1] On ample evidence, the trial court found:

From the testimony received in Court, having observed the demeanor of the witnesses, having listened to the nuances of the testimony, having examined the exhibits and the pleadings, the Court has no doubt  not a reasonable one, not even an unreasonable one, or even a scintilla, shadow or peradventure of a doubt  that the cause of the blind, brainwashed, bigoted belligerence of the children toward the Father grew from the soil nurtured, watered and tilled by the Mother. The Court is thoroughly convinced that the Mother breached every duty she owed as the custodial parent to the noncustodial parent of instilling love, respect and feeling in the children for their Father. Worse, she slowly dripped poison into the minds of these children, maybe even beyond the power of this Court to find the antidote. But the Court will try. [e.s.]
[2] In this respect, the trial court ordered:

It shall be the obligation of the Mother to do everything in her power to create in the minds of Dee Britt and Brigette a loving, caring feeling toward the Father. It shall be the Mother's obligation to convince the children that it is the Mother's desire that they see their Father and love their Father. Breach of this Paragraph either in words, actions, demeanor, implication or otherwise, will call for the severest penalties this Court can impose, including Contempt, Imprisonment, Loss of residential custody or any combination thereof.
[3] The author goes on to state:

The practitioner representing either parent needs to be sensitive to the fact that there may be deep-rooted psychological reasons why the child may not want to see the SRP.[5]
[5] See Gardner, Richard A., Recent Trends in Divorce and Custody Litigation, ACADEMY FORUM, 29(2); 3-7, 1985, a publication of the American Academy of Psychoanalysis. Dr. Gardner uses the term, parental alienation syndrome to describe a disturbance in which children are consciously or subconsciously alienated from one parent. According to Dr. Gardner, "The parent who expresses neutrality regarding visitation is essentially communicating criticism of the non-custodial parent ... `Neutrality' essentially communicates to the child the message the noncustodial parent cannot provide enough affection, attention, and other desirable input to make a missed visitation a loss of any consequence." [e.s.]
[4] [I]nsofar as any commercial speech interest is

implicated here, it is only the attenuated interest in displaying and marketing merchandise [marijuana products] in the manner that the retailer desires. We doubt that the village's restriction on the manner of marketing appreciably limits Flipside's communication of information  with one obvious and telling exception. The ordinance is expressly directed at commercial activity promoting or encouraging illegal drug use. If that activity is deemed "speech," then it is speech proposing an illegal transaction, which a government may regulate or ban entirely. Central Hudson Gas & Electric Corp. v. Public Service Comm'n, 447 U.S. 557, 563-564, 100 S.Ct. 2343, 2350, 65 L.Ed.2d 341 (1980); Pittsburgh Press Co. v. Human Relations Comm'n, 413 U.S. 376, 388, 93 S.Ct. 2553, 2560, 37 L.Ed.2d 669 (1973). [e.s.] (footnote omitted)
455 U.S. at 496, 102 S.Ct. at 1192, 71 L.Ed.2d at 370.