581 So.2d 1290 (1991)
Laurel D. SCHUTZ, Petitioner,
v.
Richard R. SCHUTZ, Respondent.
No. 72471.
Supreme Court of Florida.
May 16, 1991.
Rehearing Denied July 26, 1991.
*1291 Cynthia L. Greene and Robin H. Greene of the Law Offices of Greene and Greene, P.A., and Marsha B. Elser of the Law Offices of Elser & Hodor, Miami, for petitioner.
Andrew M. Leinoff of the Law Offices of Andrew M. Leinoff, P.A., Coral Gables, and Mark A. Gatica, Miami, for respondent.
KOGAN, Justice.
We have for review Schutz v. Schutz, 522 So.2d 874 (Fla. 3d DCA 1988), in which the district court affirmed a post-dissolution order which the petitioner contends requires her to affirmatively express feelings and beliefs which she does not have in violation of her first amendment right of free expression.[1] Although we approve the result reached below, our decision is based on a more narrow construction of the challenged order than that urged by the petitioner and accepted by the district court.
A brief summary of the facts leading up to the order at issue is sufficient for our purposes. A final judgment dissolving the six-year marriage of petitioner, Laurel Schutz (mother) and respondent, Richard R. Schutz (father) was entered by the trial court on November 13, 1978. Although custody of the parties' minor children was originally granted to the father, the final judgment was later modified in 1979. Under the modified judgment, the mother was awarded sole custody of the children, and the father was both granted visitation rights and ordered to pay child support.
As noted by the trial court, the ongoing "acrimony and animosity between the adult parties" is clear from the record. The trial court found that in February 1981 the mother moved with the children from Miami to Georgia without notifying the father. After moving, the mother advised the father of their new address and phone number. Although the father and children corresponded after the move, he found an empty house on the three occasions when he traveled to Georgia to visit the children. The father was not notified that after only seven months in Georgia the mother and children had returned to Miami. Four years later in 1985, upon discovering the children's whereabouts, the father visited the children only to find that they "hated, despised, and feared" him due to his failure to support or visit them. After this visit, numerous motions concerning visitation, *1292 custody and support were filed by the parties.
After a final hearing on the motions, the trial court found that "the cause of the blind, brainwashed, bigoted belligerence of the children toward the father grew from the soil nurtured, watered and tilled by the mother." The court further found that "the mother breached every duty she owed as the custodial parent to the noncustodial parent of instilling love, respect and feeling in the children for their father." The trial court's findings are supported by substantial competent evidence.
Based on these findings, the trial court ordered the mother "to do everything in her power to create in the minds of [the children] a loving, caring feeling toward the father ... [and] to convince the children that it is the mother's desire that they see their father and love their father." The court further ordered that breach of the obligation imposed "either in words, actions, demeanor, implication or otherwise" would result in the "severest penalties ..., including contempt, imprisonment, loss of residential custody or any combination thereof."
Although the district court construed the above quoted portions of the order to require the mother to "instruct the children to love and respect their father," 522 So.2d at 875, it concluded that she was not "`protected' by the first amendment from a requirement that she fulfil her legal obligation to undo the harm she had already caused." Id.
We begin our analysis by noting our agreement with the district courts of appeal that have found a custodial parent has an affirmative obligation to encourage and nurture the relationship between the child and the noncustodial parent. See Schutz v. Schutz, 522 So.2d at 875; Gardner v. Gardner, 494 So.2d 500, 502 (Fla. 4th DCA 1986), appeal dismissed, 504 So.2d 767 (Fla. 1987); In re Adoption of Braithwaite, 409 So.2d 1178, 1180 (Fla. 5th DCA 1982). This duty is owed to both the noncustodial parent and the child. This obligation may be met by encouraging the child to interact with the noncustodial parent, taking good faith measures to ensure that the child visit and otherwise have frequent and continuing contact with the noncustodial parent and refraining from doing anything likely to undermine the relationship naturally fostered by such interaction.
Consistent with this obligation, we read the challenged portion of the order at issue to require nothing more of the mother than a good faith effort to take those measures necessary to restore and promote the frequent and continuing positive interaction (e.g., visitation, phone calls, letters) between the children and their father and to refrain from doing or saying anything likely to defeat that end. There is no requirement that petitioner express opinions that she does not hold, a practice disallowed by the first amendment. Coca-Cola Co. v. Department of Citrus, 406 So.2d 1079, 1087 (Fla. 1981) ("the state may never force one to adopt or express a particular opinion"), appeal dismissed, 456 U.S. 1002, 102 S.Ct. 2288, 73 L.Ed.2d 1297 (1982); see Wooley v. Maynard, 430 U.S. 705, 97 S.Ct. 1428, 51 L.Ed.2d 752 (1977) (states' interest insufficient to outweigh individual's first amendment right to avoid being courier of state motto); West Virginia State Board of Education v. Barnette, 319 U.S. 624, 642, 63 S.Ct. 1178, 1187, 87 L.Ed. 1628 (1943) (state cannot "prescribe ... matters of opinion or force citizens to confess by word or act their faith therein").
Under this construction of the order, any burden on the mother's first amendment rights is merely "incidental."[2] Therefore, the order may be sustained against a first amendment challenge if "it furthers an important or substantial governmental interest ... and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." United States v. O'Brien, 391 U.S. 367, 377, 88 S.Ct. 1673, 1679, 20 L.Ed.2d 672 (1968). Accordingly, *1293 we must balance the mother's right of free expression against the state's parens patriae interest in assuring the well-being of the parties' minor children. However, as with all matters involving custody of minor children, the interests of the father and of the children, which here happen to parallel those of the state, must also factor into the equation.
In this case, the court, acting on behalf of the state as parens patriae, sought to resolve the dispute between the parties in accordance with the best interests of their children by attempting to restore a meaningful relationship between the children and their father by assuring them unhampered, frequent and continuing contact with him. See § 61.13(2)(b)1, Fla. Stat. (1985) (the court shall determine all matters relating to custody of minor children in accordance with the best interests of each child and it is the public policy of this state to assure a minor child frequent and continuing contact with both parents after marriage has been dissolved); id. § 61.13(3)(a) ("frequent and continuing contact with the nonresidential parent" is generally considered to be in best interest of child). In resolving the matter, the court also properly considered the father's constitutionally protected "inherent right" to a meaningful relationship with his children,[3] a personal interest which in this case is consistent with the state's interest in promoting meaningful family relationships. See id. § 61.001(2)(a) (one of the purposes of chapter 61 is to "safeguard meaningful family relationships").
There is no question that the state's interest in restoring a meaningful relationship between the parties' children and their father, thereby promoting the best interests of the children, is at the very least substantial. Likewise, any restriction placed on the mother's freedom of expression is essential to the furtherance of the state's interests because affirmative measures taken by the mother to encourage meaningful interaction between the children and their father would be for naught if she were allowed to contradict those measures by word or deed.
Moreover, as evinced by this record, the mother as custodial parent has the ability to undermine the association to which both the father and the parties' children are entitled. Frazier v. Frazier, 109 Fla. 164, 169, 147 So. 464, 466 (1933) (recognizing a noncustodial parent's "inherent right" to "enjoy the society and association of [his or her] offspring, with reasonable opportunity to impress upon them a father's or a mother's love and affection in their upbringing"); § 61.13(2)(b)1 (minor child is assured frequent and continuing contact with both parents). Therefore, not only is the incidental burden placed on her right of free expression essential to the furtherance of the state's interests as expressed in chapter 61, but also it is necessary to protect the rights of the children and their father to the meaningful relationship that the order seeks to restore.
Accordingly, construing the order as we do, we find no abuse of discretion by the trial court, nor impermissible burden on the petitioner's first amendment rights. Although we do not approve the district court's construction of that portion of the order under review, nor the analysis employed below, the result reached is approved.[4]
It is so ordered.
SHAW, C.J., and OVERTON, McDONALD and BARKETT, JJ., concur.
GRIMES, J., concurs in part and dissents in part with an opinion.
*1294 GRIMES, Justice, concurring in part, dissenting in part.
I agree with the content of this opinion. The problem is that this Court has no jurisdiction to take the case. The majority purports to exercise its jurisdiction under article V, section 3(b)(3) of the Florida Constitution, because the decision below "expressly construes the first amendment of the United States Constitution." Op. at 1298 n. 1. However, the decision below did not expressly construe the first amendment of the United States Constitution. It merely applied the first amendment of the United States Constitution to the facts before it.
The distinction between the construction and the application of a constitutional provision for purposes of supreme court jurisdiction was well explained by Justice Thornal in Armstrong v. City of Tampa, 106 So.2d 407, 409 (Fla. 1958):
We agree with those courts which hold that in order to sustain the jurisdiction of this court there must be an actual construction of the constitutional provision. That is to say, by way of illustration, that the trial judge must undertake to explain, define or otherwise eliminate existing doubts arising from the language or terms of the constitutional provision. It is not sufficient merely that the trial judge examine into the facts of a particular case and then apply a recognized, clear-cut provision of the Constitution. The case now before us is illustrative. Here, the Chancellor took an agreed state of facts and concluded that the appellants were engaged in "a separable intrastate" transaction that precluded the necessity of applying those provisions of the United States Constitution dealing with interstate commerce or the privileges of citizens as between the several states. On the same factual basis he concluded that it was not necessary to apply Section 1 of the Declaration of Rights of Florida. Nowhere in the final decree did the Chancellor undertake to construe, explain or define the language of the state or federal constitution.
The Court reaffirmed this position in Rojas v. State, 288 So.2d 234, 236 (Fla. 1973), cert. denied, 419 U.S. 851, 95 S.Ct. 93, 42 L.Ed.2d 82 (1974), when it said:

Applying is not synonymous with construing; the former is NOT a basis for our jurisdiction, while the express construction of a constitutional provision is.
As tempting as it is to decide a case involving matters of broad general interest, we are limited to taking those cases specifically prescribed by our constitution.
NOTES
[1] We have jurisdiction pursuant to article V, section 3(b)(3), Florida Constitution because the decision below expressly construes the first amendment of the United States Constitution.
[2] The burden is "incidental" because the state interests which are furthered by the order are "unrelated to the suppression of free expression." United States v. O'Brien, 391 U.S. 367, 377, 88 S.Ct. 1673, 1679, 20 L.Ed.2d 672 (1968).
[3] Frazier v. Frazier, 109 Fla. 164, 172, 147 So. 464, 467 (1933) (noncustodial father is "entitled to have and enjoy [child's] society for a reasonably sufficient length of time each year to enable him to inculcate in her mind a spirit of love, affection and respect for her father," if such is not contrary to best interest of child); see Michael H. v. Gerald D., 491 U.S. 110, 109 S.Ct. 2333, 2342, 105 L.Ed.2d 91 (1989) (parentchild relationship which develops within the unitary family is constitutionally protected); Quilloin v. Walcott, 434 U.S. 246, 254-55, 98 S.Ct. 549, 554-55, 54 L.Ed.2d 511 (1978) ("the relationship between parent and child is constitutionally protected").
[4] We decline to reach the other issues raised that were summarily rejected by the court below.