PER CURIAM.
Appellant, the former wife, appeals 1) a final order finding her in direct criminal contempt and sentencing her to five days in jail for lying under oath in this proceeding, 2) a non-final order awarding Appel-lee, the former husband, 150 days of makeup time-sharing with the parties’ minor child, and 3) a related non-final order giving immediate physical custody of the child to the former husband for the makeup time-sharing.[1] We affirm the criminal contempt order without further comment, and for the reasons that follow, we reverse the two non-final orders (collectively “the makeup time-sharing orders”) and remand for further proceedings consistent with this opinion.[2]
The parties were divorced in Illinois in March 2007. The former wife was granted custody of the parties’ minor child (now age 7) and the husband was granted visitation under a phased plan. The former wife subsequently relocated to Florida with the child, and in July 2007, she domesticated the Illinois dissolution judgment in St. Johns County. In April 2009, with the consent of the parties, the case was transferred to Duval County where the former wife had moved with the child. The former husband still resides in Illinois.
There have been significant problems between the parties concerning time-sharing since at least April 2008, when the former wife was found in contempt by the circuit court in St. Johns County for “failing to honor court order visitation in this cause.” Since that time, the former husband has filed a number of motions for contempt, alleging that the former wife has continued to deny his visitation and that she has alienated the child from him. Most pertinent to this appeal are the sixth and seventh motions for contempt.[3]
The sixth motion for contempt, filed in September 2010, alleged, among other things, that the “Former Wife has continued to willfully and intentionally deny the Former Husband’s visitation with the parties’ child” and that, as a result, “the Former Husband has seen the child only once, briefly since 2009.” The motion asked the court to find the former wife in contempt for denying his court-ordered visitation *342 with the child and to “make arrangements for makeup visitation” and order “any other sanctions that this Court deems appropriate, including temporary modification of custody.”
In October 2010, after a hearing, the trial court deferred ruling on the motion, but admonished the wife to cooperate with the parenting coordinator that had been appointed by the court and to not alienate the child from the former husband. In January 2011, after hearing evidence of the former wife’s continued failure to participate in the parenting coordinator process, the trial court again deferred ruling on the motion, and advised the former wife that the court was giving her “a last chance” to participate in the process and comply with the pi'ior orders concerning visitation. The trial court also warned the former wife that if the court found that she “is putting up roadblocks to this process or to the Former Husband having contact with the minor child, the Court will consider several remedies, including the award of fees and sanctions against the Former Wife, and even the change in custody threatened in prior orders.”
In February 2011, the former husband filed a seventh motion for contempt. The motion alleged that the former wife continued to deny visitation and alienate the child from the former husband. Like the sixth motion, the seventh motion asked the court to find the wife in contempt and impose remedies, including “makeup visitation” and “a temporary modification of custody.”
On May 2, 2011, after an evidentiary hearing on the motion, the trial court entered an order finding that “[fjor a period of approximately three years, the former Wife has prevented all or substantially all contact between the former [Husband] and the parties’ minor child.” The court also found that the former wife’s actions deprived the former husband of at least 150 days of time-sharing with the minor child and that there was no justification for the former wife’s actions. The court determined that the former husband was entitled to “make-up time-sharing,” and ordered it to occur as follows:
Beginning immediately and continuing until further order of the Court, but in no case for less than 150 days, the former Husband shall have and exercise 100% time-sharing with the minor child. The former Wife’s contact with the minor child shall be limited to telephonic contact of not more than 15 minutes’ duration not oftener than every 4th day, at a reasonable time to be determined by the former Husband, who shall initiate the call.
The former Wife is expressly prohibited from criticizing the former Husband in her communications with the minor child, and shall not make any inquiry of the minor child concerning his health, diet, or medical treatment, nor shall she explain the change in the child’s residence except to state that the move was ordered by a judge.
The former wife filed a motion for reconsideration, arguing that the effect of this order and the related order giving the former husband immediate physical custody of the child was to substantially modify the existing custody arrangement without the requisite finding that the change was in the child’s best interest. The trial court summarily denied the motion, and this timely appeal followed.
The former wife does not seriously challenge, and we find no error in, the trial court’s finding that the former wife deprived the former husband of time-sharing with the minor child. The record is replete with competent substantial evidence of the former wife’s intentional violations of court orders directing her not to alien *343 ate the child from the former husband and requiring her to facilitate his time-sharing with the child. Indeed, it is apparent from the record that the former wife has little to no interest in the child having a meaningful relationship with the former husband and that she has disregarded her “affirmative obligation to encourage and nurture the relationship between the child and the noncustodial parent.” Schutz v. Schutz, 581 So.2d 1290, 1292 (Fla.1991) (explaining that this obligation “may be met by encouraging the child to interact with the noncustodial parent, taking good faith measures to ensure that the child visit and otherwise have frequent and continuing contact with the noncustodial parent and refraining from doing anything likely to undermine the relationship naturally fostered by such interaction”); see also § 61.13(2)(c)l., Fla. Stat. (“It is the public policy of this state that each minor child has frequent and continuing contact with both parents after the parents separate or the marriage of the parties is dissolved .... ”).
Likewise, we find no error or abuse of discretion in the trial court’s determination that the former husband was entitled to makeup time-sharing, the purpose of which is “both to redress the wrong to the [noncustodial] parent and to effectuate compliance with the court’s authority.” LaLoggia-VonHegel v. VonHegel, 732 So.2d 1131, 1133 (Fla. 2d DCA 1999). We find no merit to the former wife’s claim that the trial court lacked the authority to order makeup time-sharing under the circumstances of this case.
First, the former wife’s trial counsel acknowledged in response to a direct question from the trial court that the former husband had requested makeup time-sharing in his motion and that the court had the authority to impose this remedy if it found that the former wife deprived the former husband of his time-sharing with the child. Second, it appears that the trial court was required to impose this remedy under the circumstances because section 61.13(4)(c), Florida Statutes (2010), unequivocally provides:
When a parent refuses to honor the time-sharing schedule in the parenting plan without proper cause, the court:
1. Shall, after calculating the amount of time-sharing improperly denied, award the parent denied time a sufficient amount of extra time-sharing to compensate for the time-sharing missed, and such time-sharing shall be ordered as expeditiously as possible in a manner consistent with the best interests of the child and scheduled in a manner that is convenient for the parent deprived of time-sharing. In ordering any makeup time-sharing, the court shall schedule such time-sharing in a manner that is consistent with the best interests of the child or children and that is convenient for the nonoffending parent and at the expense of the noncompliant parent, (emphasis added).
[[Image here]]
6. May, upon the request of the parent who did not violate the time-sharing schedule, modify the parenting plan if modification is in the best interests of the child.
7. May impose any other reasonable sanction as a result of noncompliance.
Nevertheless, we are compelled to reverse the makeup time-sharing orders because the trial court did not find that the manner in which the makeup time-sharing was imposed was in the best interest of the child, as is required by section 61.13(4)(c)l. Indeed, the trial court did not make any findings concerning the best interests of the child, either in its written orders or its oral rulings. This was error. See, e.g., LaLoggia-VonHegel, 732 So.2d at 1133 *344 (reversing order changing custody to the father as a sanction for the mother thwarting the father’s visitation because the trial court did not find that the change was in the children’s best interest); Manuel v. Manuel, 489 So.2d 183 (Fla. 1st DCA 1986) (reversing order providing an extended visitation period to the father who was deprived of visitation by the mother because the trial court did not give any consideration to the child’s best interests or needs).
The best interests of the child are always the paramount concern in child custody and time-sharing matters. See § 61.13(2)(c), Fla. Stat. (“The court shall determine all matters relating to parenting and time-sharing of each minor child of the parties in accordance with the best interests of the child .... ”); see also Clark v. Clark, 825 So.2d 1016, 1017 (Fla. 1st DCA 2002) (stating that a court must “find, at a minimum, that its custody determination is in the best interests of the child”). This point is specifically stated several times in section 61.1S(4)(c), including in subpara-graph 1, which requires the makeup time-sharing to be scheduled “in a manner that is consistent with the best interests of the child.” See also § 61.13(4)(c)6., Fla. Stat. (permitting the court to modify the custody arrangements to remedy violations of the time-sharing schedule so long as the modification “is in the best interests of the child”). Thus, under section 61.13(4)(c), it is not enough that imposing makeup time-sharing is in the best interests of the child; the manner in which the time-sharing is imposed must also be in the child’s best interests.
The former husband argues that the trial court, through its orders, recognized that it is in the child’s best interests for the former husband be given an opportunity to develop his relationship with the child by giving him substantial time-sharing to make up for the time-sharing he was denied by the former wife. The problem, however, is that the trial court did not find that the manner in which the makeup time-sharing was imposed is in the best interests of the child, and to the extent that finding is implicit in the trial court’s orders, it is not supported by competent substantial evidence.
By granting the former husband immediate custody of the child and 100% time-sharing for a period of 150 days, the order not only changed the primary custody of the child from the mother to the father but it also relocated the child from Florida to Illinois in the middle of the school year. The former husband did not request the remedy imposed by the trial court; his trial counsel did suggest that a change in custody would be the only meaningful way for the former husband to rebuild his relationship with the child under the circumstances, but counsel argued that the change should be facilitated by an expert and that it should occur “gradually over the summer.” There was no evidence before the trial court concerning the impact on the child of having to move to a new state during the middle of the school year. Nor was there any evidence before the trial court as to how the child’s autism and other medical needs would be accommodated in Illinois.
Indeed, the only evidence before the trial court regarding the impact of this proceeding on the child was presented in context of the potential incarceration of the former wife for criminal contempt. In that regard, the former wife testified that she and the child had never been apart overnight and that if she was incarcerated, it “would be very detrimental and very scary to a little boy, much less an autistic child.” She also testified that the former husband is not well versed in the child’s medical care, that he does not believe *345 there is anything wrong with the child, and that “he refuses to provide [the child] with the proper dietary and/or special accommodations that are needed.” Similarly, the child’s maternal grandmother, who lives with the former wife and the child, testified that it “would be detrimental to [the childj’s psyche” to have to spend time with the former husband without advance notice and time for the child to prepare himself. Additionally, the child’s therapist testified that the child is “very, very resistant, very, very anxious” about a relationship with the former husband, that the child “is very reactive to changes in his routine and stability,” and that any change in custody would be detrimental to the child “because of his autism spectrum disorder he does not respond well to changes in routine, to changes in his caretaking.”
Although a trial court is free to reject even unrebutted testimony, there must be some evidentiary basis for its findings. Here, the record contains no evidence that would support a finding that requiring the child to relocate to Illinois, even on a temporary basis, is consistent with the child’s best interests. Indeed, all of the testimony before the trial court concerning the child seems to establish that such an immediate and dramatic change in the child’s physical custody arrangement would be contrary to his best interests. Accordingly, on the present record, we conclude that the trial court erred in imposing makeup time-sharing the manner that it did.
This is not to say that the manner of makeup time-sharing imposed by the trial court is inherently unreasonable or inappropriate; indeed, we recognize the difficulty faced by the trial court in crafting a remedy that provides meaningful makeup time-sharing for an out-of-state father where the record reflects that the mother has refused to comply with court orders and has shown little to no interest in the child having a relationship with his father. However, as explained above, before ordering a temporary change of custody or any other type of makeup time-sharing, the trial court was required to consider the best interests of the child. See §§ 61.13(4)(c)1., 6., Fla. Stat.; and cf. LaLoggia-VonHegel, 732 So.2d at 1133 (holding that a transfer of custody as punishment is not an appropriate sanction for contempt because changing custody “may, in the absence of a finding that such a change is in the best interest of the children, penalize the children for the parent’s contumacious conduct” (emphasis added)).
We recognize that by the time this opinion is issued, the 150 days of makeup time-sharing ordered by the trial court will likely have ended. The makeup time-sharing orders do not expressly require the former husband to return physical custody of the child to the former wife at the end of this period, but the former husband represented in his brief that he intended to do so and the trial court should ensure that he does so. Accordingly, upon issuance of the mandate, we encourage the trial court to promptly set this case for a status conference to determine who has physical custody of the child and to determine whether there are any pending matters regarding custody or time-sharing that need to be resolved and, if there are, we encourage the trial court to resolve them expeditiously.[4] We express no opinion as to the appropriate outcome of any pending custody matters before the trial court, other than to note that any further *346 action on the former husband’s seventh motion for contempt must be consistent with this opinion.
In sum, for the reasons stated above, we reverse the makeup time-sharing orders and remand for further proceedings consistent with this opinion. We affirm the criminal contempt order.
AFFIRMED in part; REVERSED in part; and REMANDED for further proceedings consistent with this opinion.
WETHERELL, MARSTILLER, and SWANSON, JJ„ concur.

. We have jurisdiction to review the non-final orders under Florida Rule of Appellate Procedure 9.130(a)(3)(C)(iii).

. In a related case, we denied the former wife's petition for a writ of prohibition challenging the denial of her motion to disqualify the trial judge. See Cheek v. Hesik, Case No. 1D11-3218, 2011 WL 5139339 (November 1, 2011).

.Counsel for the former husband clarified below that the motions were actually mis-numbered and that, despite their titles, the sixth and seventh motions were actually the fifth and sixth motions. For sake of clarity, we will refer to the motions as they are titled.

. The former wife represented in her filings with this court that a "final custody hearing" was scheduled for late September 2011, but that proceeding was presumably stayed by the order to show cause issued in the related Case No. 1D11-3218, 2011 WL 5139339 on June 28, 2011. See Fla. R.App. P. 9.100(h).