DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**ELIZABETH CHAMBERLAIN,**
Appellant,

v.

**JOHN DOUGLAS EISINGER,**
Appellee.

No. 4D12-4457

[February 11, 2015]

Appeal and cross-appeal from the Circuit Court for the Nineteenth Judicial Circuit, Indian River County; Paul B. Kanarek, Judge; L.T. Case No. 31-2010-DR-073492.

A. Julia Graves, Vero Beach, for appellant.

John Douglas Eisinger, Vero Beach, pro se.

GILLESPIE, KENNETH L., Associate Judge.

Appellant, Elizabeth Chamberlain ("Mother"), appeals the trial court's order modifying timesharing, and ordering child support and alimony. Appellee, John Douglas Eisinger ("Father"), cross-appeals on the issues relating to his child support and alimony obligations. We affirm the modification of timesharing; reverse the calculation of the Mother's child support arrears and remand for further consideration; and remand to the trial court to make the requisite findings relating to the issue of imputation of income pertaining to the Father.

## I. FACTS

In July 2007, a final judgment of divorce was entered in Maryland, where the parties were residing at the time. The parties have four minor children—two girls and two boys. Under the terms of the parties' agreement, the Mother was given legal and physical custody of the four minor children and the Father was required to pay $1,200 per month as child support. The parties were ordered by the court to work with a parenting coordinator to help set a visitation schedule. The Father agreed to pay $2,000 per month in alimony until January 28, 2008, when the

alimony payments would increase to $2,300 per month.  The alimony was set for a term of ten years.  After entry of the final judgment, the Father moved to Florida while the Mother and children remained in Maryland.

In March 2010, the Maryland court found the Father in contempt for failure to pay alimony and found that he had not once made an alimony payment.  Facing incarceration, the Father paid the alimony purge of $8,000 and a child support payment of $1,200.

In August 2008, the parties entered a Consent Order in Maryland and agreed that the Father would have primary physical custody and joint legal custody of the older daughter, with the Mother having visitation.  In December 2009, the parties entered another Consent Order in Maryland, this time giving the Mother sole legal and physical custody of the younger daughter and the two sons and the Father sole legal and physical custody of the older daughter.  While no specific visitation plan was incorporated, the parties were instructed to "discuss and arrange such visitation."  No modification of child support occurred at that time.

In July 2010, while the Father was enjoying summer timesharing with the four children in Florida, the Mother, unbeknownst to the Father or the children, moved to Florida.  That same month, the Maryland court entered a new visitation order specifying dates and times for visitation.  However, the order was based on the older daughter living with the Father in Florida and the three younger children remaining with the Mother in Maryland.

In August 2010, the Father filed a Supplemental Petition to Modify Parenting Plan/Time Sharing Schedule and Other Relief in Florida, and requested full custody of the parties' four children.  The Father also filed an Emergency Motion requesting that the Mother have supervised timesharing and that she be evaluated by a psychologist.  The parties subsequently stipulated that Dr. Edwards, a psychologist, would evaluate the children and the parents and make a recommendation concerning timesharing.  Around the same time, the court entered a stipulated order granting the Father's emergency motion for timesharing which provided: (1) on a temporary basis, the younger daughter would reside with the Father and the Mother's timesharing with her would be pursuant to Dr. Edwards' recommendation; (2) the two boys would have equal timesharing with the Mother and Father; (3) Dr. Edwards would prepare a parenting plan evaluation and expedite his recommendation regarding the younger daughter; (4) both Mother and Father would submit to a psychological evaluation; (5) each parent would have daily phone contact with the boys; and (6) the minor children and the parents would attend therapy/counseling.

In March 2011, the Father filed an Amended Supplemental Petition for Modification of the Parenting Plan/Timesharing Schedule, and Modification of Alimony. A four-day trial was held in which the court addressed the Father's petition as well as the Mother's Motion for Contempt for failure to return personal property and for enforcement of past due alimony and child support. At trial, both the Mother and Father presented testimony and witnesses in an attempt to demonstrate the other parent was to blame for any problems that arose with regard to the children. As noted by the court, the parents clearly demonstrated an inability to co-parent their children. The evidence presented at trial also highlighted the contentious relationship between the Mother and her three oldest children.

At trial, the Father presented the testimony of Ms. Pierce and Dr. Edwards. Ms. Pierce, a parent of one of the girls on the youngest daughter's lacrosse team, recounted several confrontations that occurred between the Mother and younger daughter at a lacrosse tournament in September 2010.

Dr. Edwards performed an expedited evaluation on the younger daughter, and conducted interviews of the children, the Mother, the Father, the Father's new wife, and several witnesses of the incident between the younger daughter and the Mother at the lacrosse tournament. As a result of his evaluation, Dr. Edwards testified that the two daughters displayed a history of remarkable stress and emotional turmoil as a result of their relationship with the Mother. In that regard, Dr. Edwards recommended that the younger daughter remain with the Father and have visitation with the Mother one day a week. Additionally, Dr. Edwards noted that over the course of the litigation and conflict between his parents, the older son continues to be negatively impacted and perceives the Mother as the one to blame.

To refute Dr. Edwards' testimony, the Mother presented the testimony of Dr. Phil Heller, a clinical forensic psychologist, who testified that he reviewed Dr. Edwards' parenting plan evaluation and found several deficiencies. Notably, Dr. Heller never met with the children in this case. The trial court found Dr. Edwards' testimony and reports reliable and supported by the facts, and discredited Dr. Heller's testimony explaining, "[u]nfortunately, contested proceedings force the parties to seek to lay the blame for the family problems on the other party. In this case, there is plenty of blame to go around."

The trial court found there was a substantial change in circumstances since the entry of the final judgment and granted the Father's Amended

Supplemental Petition for Modification of Timesharing. In doing so, the court granted the Father majority timesharing with the two daughters, and ordered them to attend counseling with the Mother. The court granted the Father majority timesharing with the older son, with timesharing with the Mother on alternate weekends. The younger son was to have timesharing with the Mother on Monday and Tuesday, and with the Father on Wednesday and Thursday, and would alternate weekends.

As a result of the change in timesharing, the trial court ordered the Mother to pay the Father $533 per month in child support. The modification in child support was deemed retroactive to October 1, 2010. The court found that as of December 1, 2012, the Mother was in arrears in child support in the amount of $14,688.00. Because the Father had alimony arrears due to the Mother, the trial court reduced her child support arrears from monies owed by the Father which resulted in the Mother's child support arrears being zero.

The court denied the Father's Supplemental Petition for Modification of Alimony finding there had not been a substantial reduction in the Father's income since the final judgment in Maryland. As of November 30, 2012, the Father owed the Mother $140,100 in alimony arrears. After credits for child support arrears from the Mother and past due medical reimbursements, the Father was found to be in alimony arrears of $120,163.12. This appeal followed.

## II. ANALYSIS

### Modification of Timesharing

"[A] trial court's order changing custody enjoys a presumption of correctness on appellate review and will not be disturbed absent a showing of abuse of discretion." *Sanchez v. Hernandez,* 45 So. 3d 57, 62 (Fla. 4th DCA 2010) (citing *Wade v. Hirschman,* 903 So. 2d 928, 935 (Fla. 2005)). To modify an order of custody, "the movant must show both that the circumstances have substantially, materially changed since the original custody determination and that the child's best interests justify changing custody." *Id.* at 61; *see Wade,* 903 So. 2d at 931–32 n.9; *Cooper v. Gress,* 854 So. 2d 262, 265 (Fla. 1st DCA 2003). The change cannot have been contemplated by the parties. *Id.*

Demonstrating to the court that there has been a sufficient substantial change in circumstances places an "extraordinary burden" on the party seeking to modify the custody order. *Sanchez,* 45 So. 3d at 61–62. *See Shaw v. Nelson,* 4 So. 3d 740, 742 (Fla. 1st DCA 2009). This high burden

is intended to "preclude parties to a dissolution from continually disrupting the lives of children by initiating repeated custody disputes." *Pedersen v. Pedersen,* 752 So. 2d 89, 91 (Fla. 1st DCA 2000). While there is certainly a high burden, it "should not preclude legitimate review in the best interests of the child where there have been significant changes affecting the well being of the child, especially when the change of circumstances has occurred over a substantial period of time." *Id.*

When modifying a parenting and timesharing plan, the primary consideration is the best interest of the children. § 61.13(3), Fla. Stat. (2012); *see Knipe v. Knipe,* 840 So. 2d 335, 339-40 (Fla. 4th DCA 2003). Courts must evaluate all relevant statutory factors affecting the welfare and interests of the child. *See* § 61.13(3), Fla. Stat. (2012).

On appeal, the Mother argues the trial court erred in finding a substantial and material change in circumstances warranting modification of the timesharing arrangement.

After careful review of the record, we hold that the trial court did not err in concluding there was a substantial change in circumstances warranting modification of timesharing. The trial court considered evidence relevant to each of the statutory factors before finding there had been a substantial change in circumstances and that modification was in the best interest of the children.

The court found the Father displayed an ability to consider and act on the children's needs, whereas the Mother had considerable difficulty in this respect. The trial court found that "[t]he mother's inability to act on or consider the needs of her children has caused substantial problems in her relationship with her two oldest children and is causing problems with her oldest son." Moreover, the trial court took into account the daughter's desire to live with the Father, and noted that the sons were too young to express a reasonable preference. While finding that both parents were "fit", the court found that the "mother has demonstrated that as her children enter their teenage years she has great difficulty in meeting her children's needs." Also, the trial court considered the fact that the children had been spending the majority of their time with the Father and were all thriving in school and sports.

The record is replete with factors which support a material change in circumstances to modify the time sharing and that such modification was in the best interest of the children. The trial court's decision will not be disturbed.

The Mother also argues that by ordering therapy for her and her two daughters and giving the Father sole custody of the daughters, the trial court has effectively undermined her reunification efforts. As such, the Mother argues that giving the Father sole responsibility to ensure his daughters will attend therapy sessions was an abuse of discretion.

"[A] custodial parent has an affirmative obligation to encourage and nurture the relationship between the child and the noncustodial parent." *Schutz v. Schutz,* 581 So. 2d 1290, 1292 (Fla. 1991). *See Schutz v. Schutz,* 522 So. 2d 874, 875 (Fla. 3d DCA 1988); *Gardner v. Gardner,* 494 So. 2d 500, 502 (Fla. 4th DCA 1986); *In re Adoption of Braithwaite,* 409 So. 2d 1178, 1180 (Fla. 5th DCA 1982). This entails "encouraging the child to interact with the noncustodial parent, taking good faith measures to ensure that the child visit and otherwise have frequent and continuing contact with the noncustodial parent and refraining from doing anything likely to undermine the relationship naturally fostered by such interaction." *Id.*

We hold on this record that the Mother failed to provide any evidence that the Father has or intends to thwart the reunification efforts between the Mother and her daughters. In fact, the trial court found that the Mother was the one who made disparaging comments to the children about the Father. Because the Mother failed to provide evidence to support her argument, we affirm.

*Child Support*

"The standard of review for a child support award is abuse of discretion." *McKenna v. McKenna,* 31 So. 3d 890, 891 (Fla. 4th DCA 2010) (citing *Karimi v. Karimi,* 867 So. 2d 471, 473 (Fla. 5th DCA 2004)).

On this issue, the Mother argues the trial court incorrectly included unpaid alimony to decrease the Father's income and increase her income in the calculation of child support. The trial court found that the modification of child support was retroactive to October 1, 2010, when the Mother and Father entered into an agreed order placing the older daughter with the Father and requiring equal timesharing for the sons. In calculating the retroactive child support, the trial court included the $2,300 in alimony the Mother was to receive, as income to her. However, as the Mother correctly points out, the record reveals that the Father had not consistently paid alimony during that time frame. In fact, as of November 30, 2012, the trial court found the Father owed the Mother $140,000 in past due alimony.

Accordingly, the trial court erred in factoring in the Father's payment of alimony each month where he failed to make payments. Because of this error, this Court remands to the trial court for a determination of the amount of alimony the Father paid between October 1, 2010, and the entry of final judgment to determine the offset to the Mother's retroactive child support obligation. *See Marlowe v. Marlowe,* 123 So. 3d 1194, 1196 (Fla. 1st DCA 2013) (retroactive child support calculations erroneous where child support worksheets reflect that former husband paid alimony every month, thereby increasing former wife's income and decreasing former husband's, where former husband had not paid alimony consistently); *see also Swor v. Swor,* 56 So. 3d 825, 826 (Fla. 2d DCA 2011) (where former husband failed to pay alimony, "it was error to include the sums due for this time period in the calculation that was the basis for the amount of retroactive child support awarded in the final judgment").

This Court has considered the Mother's other argument concerning child support and affirms without comment.

*Father's Cross-Appeal (Alimony)*

In his cross-appeal, the Father argues the trial court erred in denying his request to modify alimony. He argues the trial court incorrectly imputed the Mother's income by failing to include the benefits she received through her employment. The trial court's order specifically took into account benefits the Mother received from her employer. Accordingly, the Father's claim is without merit.

Additionally, the Father asserts the trial court erred by imputing income to him. The Father contends the trial court erred in finding he had an annual income of $75,600[1].

In concluding that the Father has a yearly income of at least $73,000, it appears the trial court relied on a combination of evidence: (1) the Father and his current wife bought a $635,000 home in 2010; (2) they have a 30-foot boat which the Husband asserted had been repossessed; (3) the mortgage on the property is $1,900 per month and at the time of trial, the mortgage was current; (4) the Father does not have a checking or savings account in his name due to an IRS lien and operates only with cash; (5) the father admitted that his former father-in-law has allowed him to charge items on his American Express totaling more than $100,000; and (6) the

---

[1]The Father incorrectly states the trial court found he had an income of at least $75,600, where the final judgment reflects the trial court found he had an income of at least $73,000 per year.

Father has repaid all of the money except for $17,000 which he continues to make payments on.

However, the Father testified he makes $12 per hour and worked between 60 and 80 hours per week at the bait shop he and his current wife owned. In the final judgment, the trial court incorrectly stated the Father testified he made $20 per hour.

Notwithstanding the fact that the Father obviously had other sources of income, the trial court's final judgment does not state the specific factors the trial court considered in calculating the Father's income, only stating that number was determined "[b]ased on all of the evidence presented."

This Court, on this record, acknowledges that there was certainly evidence suggesting that the Father was not being entirely truthful regarding his finances; "[w]hen imputing income, the trial court must set forth factual findings concerning the probable and potential earnings level, source of imputed and actual income, and adjustments to income." *Alon v. Alon,* 665 So. 2d 1110, 1111 (Fla. 4th DCA 1996) (citing *Jones v. Jones,* 636 So. 2d 867, 868 (Fla. 4th DCA 1994)); *see also Bimonte v. Martin-Bimonte,* 679 So. 2d 18, 19 (Fla. 4th DCA 1996) (error to impute income to husband without setting forth factual findings to support imputation).

In *Alon,* we held the trial court's imputation of income, without providing the source of the imputed income, was error. 665 So. 2d at 1111. In remanding, this Court noted that "[t]he trial court obviously felt appellant had resources, but did not delineate them as the basis for the imputed income." *Id.* This was error. The same error occurred here. The trial court in this case clearly felt that the Father had resources, but failed to make the requisite findings as to how the $73,000 figure was derived.

Notably, this Court commends the trial court's diligence in deciphering the issues, digesting the extensive history associated with this case, and the patience displayed in refereeing such a contentious contest below.

*Affirmed in Part; Reversed in Part and Remanded.*

DAMOORGIAN, C.J., and STEVENSON, J., concur.

\* \* \*

***Not final until disposition of timely filed motion for rehearing.***