DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**SUNI L. REED,** n/k/a **SUNI L. MEYERS,**
Appellant,

v.

**CHRISTOPHER J. REED,**
Appellee.

No. 4D14-4012

[January 6, 2016]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Krista Marx, Judge; L.T. Case No. 502007DR002069XXXXNB.

Ralph T. White of Schutz & White, LLP, West Palm Beach, for appellant.

No appearance for appellee.

WARNER, J.

The former wife/mother in a divorce case timely appeals an order granting the former husband/father's supplemental petition for modification of time-sharing. The trial court found that there had been a substantial change in circumstances since the execution of the agreement setting time-sharing in the final dissolution judgment, as the father had stabilized his life and wanted more time with his child. This is insufficient to constitute a substantial change in circumstances. Also, the court determined that a change would be in the best interests of the child without any evidence to support the best interest factors. We therefore reverse.

The parties have one minor child. Pursuant to the 2008 dissolution of marriage proceedings, the parties agreed at mediation to the following terms with respect to the child:

> Mother shall be the primary residential parent with shared parental responsibility.

> Father shall have visitation each Saturday from 9:00 A.M. to 3:00 P.M., and each Wednesday from 4:00 P.M. to 7:00 P.M. Father shall pick up and deliver the child to Mother's residence.
>
> . . . .
>
> The above visitation schedule is entered on a temporary basis, without prejudice to either party to request modification **prior** to final hearing.

(Emphasis supplied). The court entered a final judgment of dissolution of marriage based upon the settlement agreement, stating that the mother had sole custody of the child. The court retained jurisdiction to enforce the terms of the mediation agreement and the final judgment, and stated that it "ratified and confirmed" the mediation agreement.

Five years later, the father petitioned to modify the time-sharing schedule and reduce child support, stating that he would like "a 50/50 time schedule," and that the mother was "controlling the time to see [the] child." The father stated in the petition that it was in the child's best interests to increase his visitation because the child "needs a father." The father also petitioned for modification of child support, alleging that he now was working for himself for reduced pay. The mother answered both petitions and denied the father's allegations.

At the hearing before a general magistrate, the father testified that the mother was changing the dates for his scheduled visitation and withholding information regarding the child, such as her school report cards. He admitted that after the divorce he had stopped seeing the child, but now he has another child and wants his daughter to be part of his life. He also admitted that he had filed for the petition for modification in retaliation for the mother filing for contempt and commitment because of his child support arrearages. The father's mother testified to the difficulty the father had seeing his child on the visitation days, mainly in the month before the hearing. She said that the father really wanted more time with his child and to be a better father.

The mother testified that for three years the father did not exercise any visitation with the child. Since 2010, the father had exercised his visitation sporadically — fifteen times in 2011, three times in 2012 (all at his parents' house), and four times in 2013. She did not have a telephone number for him until she filed the motion for contempt for nonpayment of child support. The mother did bring the child to the father's parents' home for holidays, even when the father was not exercising his visitation. She

2

testified that she had requested to reschedule visitation for personal reasons twice in the last three months, and had cancelled visitation three times because the child was sick, each time notifying the father or his parents and getting their agreement. She testified that the child was scared of the father, "afraid that he's gonna yell at her and she's gonna get in trouble . . . ." The mother's mother and sister both testified, confirming the mother's testimony regarding the father's sporadic visitation.

The magistrate recommended that the father's motions be granted, that his child support be reduced and the parties continue shared parental responsibility. In his report, the magistrate found that there had been a significant change in circumstances; "that the Parties originally anticipated that [the father] would not have overnight time-sharing with the minor child on a temporary basis"; that the father had "stabilized his life"; and that it was in the child's best interests to have overnight time-sharing with the father. The magistrate's report further stated that if the parties could not agree as to a time-sharing schedule, they would have to abide by the schedule attached to the report, which was the standard schedule for the circuit. The magistrate did not make any finding that the mother was interfering with the father's visitation.

The mother filed objections to the report, contending that the magistrate erred in characterizing the settlement agreement as containing a "temporary" schedule for visitation. She also argued that the magistrate had not considered the best interests of the child, who was essentially estranged from the father because of his lack of visitation. The court, however, overruled the objections, and entered an order adopting the magistrate's report. The court found a substantial change in circumstances based upon the "temporary" nature of the initial visitation schedule, together with the stabilization of the father's life. Without analyzing the necessary factors, the court found that it was in the child's best interests for the father to have increased visitation. The mother appeals.

Pursuant to section 61.13(3), Florida Statutes (2014), "[a] determination of parental responsibility, a parenting plan, or a time-sharing schedule may not be modified without a showing of a substantial, material, and unanticipated change in circumstances and a determination that the modification is in the best interests of the child." *See also Wade v. Hirschman*, 903 So. 2d 928, 931 (Fla. 2005) (finding that this standard applies to the modification of all custody agreements). Stated differently, a movant must show that (1) circumstances have substantially and materially changed since the original custody determination, (2) the change was not reasonably contemplated by the

parties, and (3) the child's best interests justify changing custody. *See id.* at 931 n.2. "This test promotes the finality of the judicial determination of the custody of children and reflects the general belief that stability is good for children." *Sanchez v. Hernandez*, 45 So. 3d 57, 61 (Fla. 4th DCA 2010). Accordingly, "there is a presumption in favor of the reasonableness of the original decree." *Wade*, 903 So. 2d at 933. This three-part test must be satisfied in order to overcome the res judicata effect of the final judgment. *Id.* at 934.

"Demonstrating to the court that there has been a sufficient substantial change in circumstances places an 'extraordinary burden' on the party seeking to modify the custody order." *Chamberlain v. Eisinger*, 159 So. 3d 185, 189 (Fla. 4th DCA 2015) (quoting *Sanchez*, 45 So. 3d at 61–62). However, this burden "'should not preclude legitimate review in the best interests of the child where there have been significant changes affecting the well being of the child, especially when the change of circumstances has occurred over a substantial period of time.'" *Id.* (quoting *Pedersen v. Pedersen*, 752 So. 2d 89, 91 (Fla. 1st DCA 2000)). Accordingly, when modifying custody, the primary consideration is the best interests of the child. *Id.*; *see also* § 61.13(3), Fla. Stat. (2014) (listing factors to be evaluated in determining the best interests of the child).

The trial court erred in concluding that the settlement agreement, ratified and adopted by the court in the final judgment, was temporary as to visitation. It is clear from the settlement agreement that the schedule was to be temporary only until the final judgment, and that either party could request changes until then. As none were made, the schedule became final with the final judgment. This conclusion is necessary to promote the res judicata effect of the final judgment and the stability of the child. *See Wade*, 903 So. 2d at 934.

Additionally, the trial court erred by finding that the mere stabilization of the father's life constituted a substantial change in circumstances, as both the father's allegations and his proof were insufficient. The fact that the father now has a relatively stable home environment is, in and of itself, inadequate to constitute a substantial change in circumstances. *See Bartolotta v. Bartolotta*, 687 So. 2d 1385, 1387 (Fla. 4th DCA 1997); *see generally Miller v. Miller*, 671 So. 2d 849, 852 (Fla. 5th DCA 1996).

Furthermore, the trial court failed to make any analysis of the "best interest" factors set forth in section 61.13(3), Florida Statutes (2014). There was simply no evidence introduced at the magistrate's hearing to support a conclusion that the child's best interests would be served by a change in the time-sharing provisions. Indeed, the only evidence regarding

the child would suggest that the child was not prepared for increased visitation with her father due to his sporadic visitation in the past.

For all of the foregoing reasons, we reverse the order modifying the time-sharing schedule and remand the case to the trial court, with directions that the father's motion for modification be denied in accordance with this opinion.

LEVINE and KLINGENSMITH, JJ., concur.

\* \* \*

***Not final until disposition of timely filed motion for rehearing.***