[No. 27856-8-I. Division One. March 22, 1993.]

*In the Matter of the Marriage of* SULA A. OLSON,
*Respondent, and* NORMAN G. OLSON,
*Appellant.*

*Patrick J. Mullen* and *Lee, Smart, Cook, Martin & Patterson, P.S., Inc.,* for appellant.

*Mary L. Gaudio* and *Daniel Modeen,* for respondent.

SCHOLFIELD, J. — Norman Olson appeals a decree of dissolution, arguing that the trial court erred in failing to appoint an interpreter, denying his right to cross examination, ordering an assignment of rents, and imposing a permanent restraining order. We affirm.

## FACTS

Norman and Sula Olson married in 1970, had two children, and were separated in 1988. During their marriage, Mr. Olson was self-employed as a handyman and apartment manager, and acquired four parcels of property. Upon their separation, the trial court entered a temporary order restraining both parties from coming to or entering the other's residence, discussing the proceedings with their children, and making derogatory or alienating remarks about the other party to or in front of the children. The court also ordered that income from the parties' rental property be divided equally between them, and Mr. Olson was to pay $300 per month as "undifferentiated family support".

Beginning in November of 1988, Mr. Olson decreased the amounts he paid to Mrs. Olson, and by April 1989, ceased

paying child support. Mr. Olson also violated several of the temporary restraining orders. A petition for dissolution of marriage was filed. The matter was set for trial on September 4, 1990, at which Mr. Olson, acting as his own attorney, failed to appear. The order of default entered against him was later vacated, and another trial, from which this appeal arises, began on October 9, 1990.

At the beginning of trial, the court apparently noticed that Mr. Olson could not hear well, and stated, "Mr. Olson, are you having a hearing problem? Why don't you sit in the jury box so you will be closer." Occasionally during trial, Mr. Olson indicated that he did not understand what was said.

The trial court entered findings of fact and conclusions of law, and a decree of dissolution was entered January 15, 1991.

### MR. OLSON'S HEARING IMPAIRMENT

Mr. Olson contends that because he suffered from a substantial hearing impairment, the trial court was mandated by state and federal law to appoint an interpreter, or provide an amplification device.

RCW 2.42.120(1) provides that:

> (1) If a hearing impaired person is a party or witness at any stage of a judicial . . . proceeding . . . the appointing authority shall appoint and pay for a qualified interpreter to interpret the proceedings..

A "qualified interpreter" is a person who is certified by the State. RCW 2.42.110(2). A "hearing impaired person" is one who cannot readily understand the spoken language, and includes persons who are "hard of hearing". RCW 2.42.110(1). The intent of RCW 2.42, Interpreters in Legal Proceedings, is to:

> secure the constitutional rights of deaf persons and of other persons who, because of impairment of hearing or speech, are unable to readily understand or communicate the spoken English language, and who consequently cannot be fully protected in legal proceedings unless qualified interpreters are available to assist them. ·

RCW 2.42.010. *See also* RCW 2.42.110.

■ The appointment of an interpreter is within the discretion of the trial court. *State v. Mendez*, 56 Wn. App. 458, 462-63, 784 P.2d 168 (1989), *review denied*, 114 Wn.2d 1017 (1990). The trial court in *Mendez* ruled that the trial court did not have an affirmative obligation to appoint an interpreter for the defendant where his lack of fluency or facility in language was not made apparent to the trial judge.

■ During trial, Mr. Olson indicated to the court his inability to hear some of the proceedings. For example, he stated, "I can't really hear everything she's saying, I'm sorry"; "Will you speak this way so I can make a note of this?"; "Would you speak up?"; "Pardon me, will you state that again?"; and "I have a hearing problem. Any disturbance bothers me."

Following his requests for the witness to speak louder, Mr. Olson was silent, suggesting that the witness' modified voice level allowed Mr. Olson to hear. Never did Mr. Olson indicate a need for additional help in hearing the proceedings, nor did he state that although the witness was speaking louder, he still could not hear. From the record, it appears the court had every reason to believe that Mr. Olson was accommodating his hearing problem by asking the witnesses to speak up.[1]

We also find that Mr. Olson's hearing impairment was accommodated to the extent required by the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.*

### MR. OLSON'S CROSS EXAMINATION OF MRS. OLSON

Mr. Olson contends that the trial court improperly caused him to cease cross examination of his wife. Mrs. Olson contends there is nothing in the record suggesting the trial court improperly restricted Mr. Olson's cross examination.

Not surprisingly, the record reflects some puzzlement Mr. Olson had in handling his dual roles as witness and pro se attorney:

THE COURT: Do you have any other questions you wish to ask?
MR. OLSON: Let's see, well, I guess it would be the same problem before. I may want to just answer —

---

[1] It is not even clear how providing an interpreter under RCW 2.42 would have helped Mr. Olson, as there is no indication he used sign language.

THE COURT: I will give you that opportunity. I have a question to ask.

MR. OLSON: As far as the people in the duplex in the lower unit —

THE COURT: No, these are questions. Do you have any questions?

MR. OLSON: No.

THE COURT: Okay, I will give you an opportunity to respond. I have a question.

Later, when Mr. Olson sat in the witness chair, the following occurred:

MR. OLSON: I guess I am confused about that lump sum. I don't know what you're talking about.

THE COURT: This is the time that if you want to say anything, you can.

Mr. Olson then testified. On appeal, Mr. Olson contends the above interactions, and others similar to it, were improper because the court was interrupting him in a manner which violated his right to cross-examine the witness, his wife.

█ Mr. Olson raises this issue for the first time on appeal. An appellate court may refuse to review any claim of error that was not raised in the trial court, with some exceptions, including a "manifest error affecting a constitutional right." RAP 2.5(a)(3). Mr. Olson fails to adequately put forth an allegation that his constitutional rights have been infringed. We decline consideration of this issue for failure to raise the issue below.

Even if we were to consider the merits of the issue, Mr. Olson's argument is not persuasive. The record indicates he was unsure how cross examination takes place, or what its purpose is. Rather, Mr. Olson seemed anxious to make his own statements as a witness. The trial court asked if he had any questions to ask the witness, and he answered, "No". His answer was unambiguous, and it does not appear that the trial court treated him unfairly by terminating or preventing effective cross examination. Indeed, the trial court made cross examination possible for Mr. Olson by suggesting that now was his chance to ask questions, which he declined to do in an effective manner. The fact that he asked very few

questions or failed to object to damaging evidence is not necessarily evidence that he did not hear what was going on. It is just as likely that he did not have any objection or did not know how to object, and we find no basis for attributing inactivity on his part to his claimed hearing impairment.

We note the trial court was under no obligation to grant special favors to Mr. Olson as a pro se litigant, nor is this court. Understandably, as a pro se litigant, Mr. Olson's representation of himself was unskilled. Undoubtedly, an attorney would have made different tactical decisions and more effective use of cross examination. Unfortunately for Mr. Olson, "the law does not distinguish between one who elects to conduct his or her own legal affairs and one who seeks assistance of counsel — both are subject to the same procedural and substantive laws." *In re Marriage of Wherley*, 34 Wn. App. 344, 349, 661 P.2d 155, *review denied*, 100 Wn.2d 1013 (1983).

### ASSIGNMENT OF RENTS

■ The trial court found that Mr. Olson had consistently failed to pay temporary child support to Mrs. Olson, and that he "is unlikely to comply voluntarily with this Court's order respecting future child support." Finding of fact 5.5. On appeal, review of the findings and conclusions is limited:

> Where the trial court has weighed the evidence our review is limited to determining whether the findings are supported by substantial evidence and, if so, whether the findings in turn support the trial court's conclusions of law and judgment. Substantial evidence is evidence in sufficient quantum to persuade a fair-minded person of the truth of the declared premise.

(Citations omitted.) *Holland v. Boeing Co.*, 90 Wn.2d 384, 390-91, 583 P.2d 621 (1978).

Mr. Olson concedes that he failed to pay child support to his wife. As of trial, his support arrearage was $4,302. Mrs. Olson testified that her husband stated he should not have to pay her money, that she did not deserve any money, that she should "disappear", and that because she has a job she is not entitled to anything he earns. This testimony supports the

trial court's legal conclusion that rents should be assigned to Mrs. Olson to secure payment of Mr. Olson's support obligations.

■ Assignment of rents is a reasonable remedy here because Mr. Olson is self-employed, and a wage assignment is not available. Additionally, assignment of rents should work no hardship on Mr. Olson that he would not otherwise have, because he owes child support one way or the other. Assignment of rents merely guarantees that Mrs. Olson will receive the uncontested amount of monthly child support.

## INJUNCTION

The trial court permanently restrained Mr. Olson from:

A. Entering the family home at any time without the express consent of the Petitioner;
B. Making harassing remarks or threats to anyone involved in this litigation including the wife and any of the wife's attorneys;
C. Making any disparaging remarks concerning the Petitioner/Wife to the children of the parties.

The court justified its restraining orders by noting Mr. Olson's conduct toward his wife and children.[2] Injunctions A and B are apparently unchallenged by Mr. Olson because he devotes no specific argument in his brief against them, except to the extent they were argued in the previous issues.

Concerning the injunction prohibiting "disparaging remarks", the trial court stated:

I disagree that you have to answer your children "honestly," because it is not that you are being dishonest with the children. There is a difference between facts and opinions, and what you are giving is your opinion, and if your opinion is negative, it only hurts the children, it doesn't help. You may

---

[2]During trial, Mr. Olson acknowledged that he entered his wife's residence without her express approval. Mrs. Olson testified that Mr. Olson entered the house on numerous occasions despite changing the locks. She also stated that at one time he made a comment to their son that "he should beat [Mrs. Olson] over the head with a club and knock some sense into" her. Their daughter heard a comment by Mr. Olson about someone coming to "take [Mrs. Olson] away in a box", and Mrs. Olson testified that her husband made derogatory statements to the children.

say you don't approve of divorce, but you can leave it at that. I think they know that. They probably don't approve either. No one does, but it is a fact of life. However, if the restraining order is to have any teeth in it, the wife will have to follow through.

Mr. Olson cites only one case, *Pearce v. Pearce*, 37 Wn.2d 918, 226 P.2d 895 (1951), for the contention that the trial court exceeded its proper limits in enjoining Mr. Olson's interaction with his children. In *Pearce,* the trial court entered a temporary restraining order preventing the wife from associating or communicating with a third person, and the third person from associating with the wife. The trial court was reversed in part because the husband sought the divorce, and he therefore could not be said to be asking "for the protection of the society and affection of his wife". *Pearce,* at 922. Mr. Olson cites no other cases nor any other authority for his First Amendment and vagueness arguments against the injunction prohibiting "disparaging" remarks.

In *Dickson v. Dickson,* 12 Wn. App. 183, 529 P.2d 476 (1974), *review denied,* 85 Wn.2d 1003, *cert. denied,* 423 U.S. 832 (1975), Mr. Dickson appealed from an injunction prohibiting his representing that Mrs. Dickson was his wife, citing freedom of speech. The court noted that First Amendment rights are not absolute and may be limited in the family law context.

> If the First Amendment right is not deemed paramount, injunctive relief is appropriate if there is no adequate remedy at law. . . .
>
> . . . .
> Involved here is the basic constitutional right to speak and write what one wishes. . . . While it cannot be said that his campaign to outlaw divorce unjustifiably interferes with Mrs. Dickson's life, even though she may not agree with his views, his statements about her mental health and relation to him cannot be so characterized. Since they are injurious to her reputation and subject her to scorn and ridicule, they are clearly defamatory. . . . [T]hese statements, when considered in light of the fact that she may date other men or marry again, may lead others to think of her as a loose woman, as adulterous, or as bigamous. In addition to the indirect effect this will have on the children because their mother will be upset, there

will be a direct effect on them through damage to the reputation of their family and to their feelings about their mother. . . . [I]nterference with Mrs. Dickson's privacy and the children's well-being outweighs Mr. Dickson's absolute exercise of his First Amendment rights of free speech . . .

. . . .
. . . The thrust of the injunction is the protection of Mrs. Dickson's minor children. It is clear that a court in a divorce action retains jurisdiction over children of the marriage until they reach majority, in order to assure that their best interests are furthered. This is not a hollow duty. Our state courts have often reiterated that injunctive relief is proper where the welfare of minor children is involved. This position undoubtedly stems from the well-founded conclusion that there is often no adequate remedy at law where minors are concerned. Therefore, with its continuing jurisdiction over minor children, a court is empowered to grant equitable relief prohibiting interference with the custody, welfare and best interests of children even after the divorce decree is final. Thus, in the case at bar the power of the trial court in protecting the welfare of minor children was substantial.

(Citations omitted.) *Dickson*, at 187-89. The court concluded that under the First Amendment, Mr. Dickson could represent that he is still married "in the eyes of God" according to his religious beliefs, but he could not represent that she is still his legal wife. *Dickson*, at 191.

Few other cases around the country have dealt with this issue. In *Schutz v. Schutz*, 581 So. 2d 1290 (Fla. 1991), the mother appealed from an order for her

"to do everything in her power to create in the minds of [the children] a loving, caring feeling toward the father . . . [and] to convince the children that it is the mother's desire that they see their father and love their father."

*Schutz*, at 1292. The court found that the order could be sustained against a First Amendment challenge if it "furthers an important or substantial governmental interest . . . and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." *United States v. O'Brien*, 391 U.S. 367, 377, 20 L. Ed. 2d 672, 88 S. Ct. 1673 (1968). The court balanced the mother's right of free expression not only against the

State's parens patriae interest in assuring the well-being of the minor children, but also against the interests of the father and the children, which happened to be parallel to those of the State.

No one denies here that Mr. Olson is presumed to have a First Amendment right to speak his mind freely. Counterbalancing Mr. Olson's loss of First Amendment rights is the State's and Mrs. Olson's interest in preserving and fostering healthy relationships between parents and their children.

Although the welfare of children is the State's paramount concern in dissolutions, restraining speech merely on the basis of content presumptively violates the First Amendment. *Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 89 L. Ed. 2d 29, 106 S. Ct. 925 (1986). Because freedom of speech is a paramount constitutional right, we interpret the trial court's prohibition against "disparaging remarks" to be those which are defamatory of his former wife. So interpreted, we find no First Amendment violation.

Affirmed.

FORREST and AGID, JJ., concur.