# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| JDH CRANBERRIES, LLC, a Wisconsin limited liability company,<br><br>Respondent,<br><br>v.<br><br>JAMES J. O'HAGAN and REBECCA LYNNE O'HAGAN, husband and wife; also all other persons or parties unknown claiming any right, title, estate, lien, or interest in the real estate described in the complaint herein,<br><br>Appellants. | No. 48830-2-II<br><br><br><br>UNPUBLISHED OPINION |

MELNICK, J. — After a long history of litigation related to property now owned by JDH Cranberries (JDH), JDH filed a complaint against James J. O'Hagan and his wife[1] for ejectment and to quiet title. O'Hagan filed a "counterclaim" against the Washington State Bar Association (WSBA). O'Hagan appeals the trial court's granting of the WSBA's motion to dismiss and JDH's motion for summary judgment. We conclude that the judge properly denied O'Hagan's affidavit of prejudice and did not violate the appearance of fairness doctrine. O'Hagan raises other issues; however, we do not consider them because he failed to adequately brief them. We affirm.

---

[1] O'Hagan's wife did not file or sign any pleadings. She did not appeal the orders.

FACTS

In 1994, O'Hagan brought a civil suit over water rights against his neighbor and fellow cranberry farmer, Kenyon Kelley. In 1996, Northwest Farm Credit Services (FCS) refinanced a mortgage on Kelley's cranberry farm (the property), giving FCS an interest in the property.

In 2000, O'Hagan won a judgment against Kelley. The superior court awarded a judicial lien on the Kelley property pursuant to the judgment.

Kelley then filed for bankruptcy. The bankruptcy court issued an order that voided O'Hagan's judicial lien on the Kelley property. On three occasions O'Hagan unsuccessfully tried to execute the lien in bankruptcy court. FCS obtained a judgment and decree of foreclosure on the property. The superior court ruled that all of Kelley's and O'Hagan's interests in the Kelley property were subordinate to FCS's judgment of foreclosure. We heard an appeal by FCS and held that O'Hagan could not continue his efforts to execute the judicial lien.[2]

In 2012, the bankruptcy court entered an injunction against O'Hagan as a vexatious litigant. The court ordered that O'Hagan must file an ex parte motion for leave to file any complaint, motion or any other request for relief, or to seek discovery related to the property in question in this case.

In 2015, JDH purchased the Kelley property. Without an ex parte motion seeking leave, O'Hagan filed an affidavit of hostile possessory interest against the property, claiming an "adverse possessory interest." Suppl. Clerk's Papers (CP) at 1053.

JDH filed a complaint for ejectment and to quiet title to its property against O'Hagan and his wife, Rebecca Lynn O'Hagan. JDH also requested the trial court award costs and attorney fees.

---

[2] *O'Hagan v. Nw. Farm Credit Servs.*, No. 38676-3-II (Wash. Ct. App. Nov. 16, 2010) (unpublished), https://www.courts.wa.gov/opinions/.

O'Hagan filed a pleading entitled "COUNTERCLAIM AGAINST WASHINGTON STATE BAR ASSOCIATION" and "COMPLAINT FOR DAMAGES."[3] 1 CP at 160.

I.    AFFIDAVITS OF PREJUDICE

O'Hagan filed an affidavit of prejudice against the assigned judge. The case was reassigned.

O'Hagan filed a second affidavit of prejudice against the new judge. O'Hagan stated that the judge previously presided over a case involving O'Hagan's son, and during the case's proceedings, the judge had called O'Hagan a "troublemaker" and treated him rudely in open court. 1 CP at 176. O'Hagan stated that based on that incident and the judge's membership in the WSBA, he did not have confidence in the judge's ability to treat him with honesty or fairness.

The judge denied the affidavit because O'Hagan was only entitled to one affidavit of prejudice as a matter of right, and that "any claims that he [made] in his statement that I made some personal statement against him [were] just not supported by the facts." Report of Proceedings (RP) (Feb. 8, 2016) at 4.

II.    WSBA MOTION TO DISMISS

The WSBA filed a motion to dismiss for a lack of subject matter jurisdiction pursuant to CR 12(b)(1), and for failure to state a claim upon which relief could be granted pursuant to CR 12(b)(6). The WSBA also argued that any claim for damages based on an alleged failure to discipline would be barred by quasi-judicial immunity.

O'Hagan did not file any opposition to the WSBA's motion before the hearing. O'Hagan did file an untimely response which included a motion to disqualify all WSBA members as judges.

---

[3] O'Hagan seemed to seek an injunction against the WSBA, based on an alleged breach of duty by failing to hold lawyers to their duty to the justice system, clients, and society.

O'Hagan did not attend the hearing on the WSBA's motion. The court granted the WSBA's motion to dismiss with prejudice.

III.    JDH MOTION FOR SUMMARY JUDGMENT

JDH filed motions for summary judgment, an injunction enjoining O'Hagan from any future legal action with respect to the property and sanctions. JDH argued that it held superior title and therefore, it was entitled to an order of ejectment and quieting title. JDH also argued that res judicata and collateral estoppel barred O'Hagan from asserting a judgment lien, and that O'Hagan's claims were frivolous.

O'Hagan responded to JDH's motion and argued that he contested the facts, and thus, a jury needed to determine the facts.

The court granted JDH's motion for summary judgment and awarded costs and statutory fees. It denied the motion for sanctions and an injunction. The court warned O'Hagan that if he continued to pursue the matter, then it was likely that sanctions and an injunction would be ordered, regardless of whether the issue was heard by him or a different judge.

O'Hagan filed a motion for reconsideration of both summary judgment rulings, but the pleading focused on allegations of the judge's bias.

At a hearing, the court denied O'Hagan's motion for reconsideration. It also struck all pleadings filed by O'Hagan, and prohibited O'Hagan from filing any further pleadings without leave of the court because there existed prior, valid orders from the bankruptcy court still in effect that precluded O'Hagan from filing pleadings related to the property without leave of the court.

In so ruling the court cited the bankruptcy court's 2012 against O'Hagan as a vexatious litigant and the order that stated that O'Hagan must file an ex parte motion for leave to file any complaint, motion or any other request for relief or from seeking discovery related to the property

in question in this case. The court found that O'Hagan remained a vexatious litigant. After finding bad faith and after determining O'Hagan's motions were frivolous, the trial court awarded JDH sanctions pursuant to CR 11 and RCW 4.84.185 for reasonable attorney fees and costs. The court entered an order granting JDH's motion for summary judgment, injunctive relief, and sanctions. O'Hagan appeals.

ANALYSIS

I.      NONCOMPLIANCE WITH RULES OF APPELLATE PROCEDURE (RAPS)

The WSBA argues that O'Hagan failed to assign error to any of the superior court's rulings as they relate to the WSBA, and did not present argument on the alleged errors in his brief, and thus, we should not consider any issues related to the WSBA's motion to dismiss. JDH did not address this issue in its briefing, nor did O'Hagan file a reply brief. We agree with the WSBA and decline to consider any of the issues presented on appeal relating to the summary judgment orders or motion to dismiss.

O'Hagan is a self-represented litigant (SRL). In general, SRLs are held to the same standard and rules of procedure as attorneys. *In re Marriage of Olson*, 69 Wn. App. 621, 626, 850 P.2d 527 (1993).

In his 17 assignments of error, O'Hagan does not raise any argument related to either the WSBA's motion to dismiss or JDH's motion for summary judgment. O'Hagan argues numerous issues that were neither raised below nor relevant to this appeal. Many of them relate to allegations against the judge.[4]

These arguments are not supported by the record. O'Hagan's citations to the record in his assignments of error do not necessarily reflect what he argues. Some examples follow. O'Hagan

---

[4] O'Hagan also assigned error to a few more discernable issues, discussed further below.

alleges that the judge acknowledged that fraudulent transfers occurred but he had no duty to address them; however, the page cited to by O'Hagan includes the judge explaining the term "fraudulent transfer" to O'Hagan. RP (Feb. 29, 2016) at 27.

O'Hagan's claim that the judge acknowledged that O'Hagan was a victim of organized fraud by court officers is incorrect. At the page cited, the judge asked O'Hagan clarifying questions in an attempt to understand O'Hagan's argument. The judge explained to O'Hagan why they were before the court and stated, "You have no document that says any fraud on this court has happened." RP (Mar. 14, 2016) at 62. This statement is contrary to what O'Hagan claims.

O'Hagan alleges that the judge threatened to take away his property if O'Hagan continued to document the fraud of the judicial officers. However, the page to which O'Hagan cites does not contain any such threat; the judge explained that he would continue the injunction against O'Hagan, ordered by the bankruptcy court. O'Hagan also alleged that the judge executed fraud and theft schemes of colleagues in the WSBA. He cites to the same pages of the record already discussed. The record does not support his contention.

O'Hagan also claims the judge ignored his exhibits. On the contrary, O'Hagan discussed each of his exhibits he presented thoroughly. The judge ultimately decided they were irrelevant or unpersuasive.

O'Hagan claims that the judge closed the courtroom to video cameras and purged the record of his pleadings. At the page cited, the judge explained his ruling and the existing injunction as the reason for striking O'Hagan's pleadings. The record does not reflect that any courtroom closure occurred. O'Hagan cites to these same pages of the record to support his claim that the judge threatened him and harassed him. The record does not support these allegations.

6

48830-2-II

In addition, O'Hagan did not support these assignments of error with any argument or citation to authority in his brief.

RAP 10.3(a)(6) directs each party to supply, in its brief, "argument in support of the issues presented for review, together with citations to legal authority and references to relevant parts of the record." We do not consider conclusory arguments that are unsupported by citation to authority. *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.3d 549 (1992). Failure to provide argument and citation to authority in support of an assignment of error precludes appellate consideration under RAP 10.3(a)(6). *Cowiche Canyon*, 118 Wn.2d at 809. Because O'Hagan failed to cite to authority or provide substantive argument for any of these issues, we do not consider them.

II.    AFFIDAVIT OF PREJUDICE

O'Hagan seems to argue in a few of his assignments of error that the judge should have recused himself after O'Hagan filed an affidavit of prejudice against him.[5]

RCW 4.12.050(1)[6] permits a party to disqualify a judge once as a matter of right, upon the timely filing of a motion and affidavit of prejudice, which need not substantiate the claim of prejudice. However, after exercising the statutory right to remove a judge, a party may not disqualify a second judge unless it shows actual prejudice. RCW 4.12.050(1). "[I]f the party shows actual prejudice, the court must consider a motion for disqualification even if the statutory right has been exhausted." *State v. Detrick*, 90 Wn. App. 939, 942-43, 954 P.2d 949 (1998).

---

[5] We need not consider this issue because O'Hagan did not provide any substantive argument or citation to legal authority to support his argument. *In re Marriage of Fahey*, 164 Wn. App. 42, 59, 262 P.3d 128 (2011). However, we choose to consider the issue.

[6] This statute was replaced in the 2017 legislative session. However, the substance of the statute remains the same.

7

On December 14, 2015, O'Hagan filed an affidavit of prejudice against the originally assigned judge. The trial court reassigned the case. On February 1, 2016, O'Hagan filed a second affidavit of prejudice, this time against the new judge. He alleged prejudice based on an incident in a case involving his son over which the judge presided. O'Hagan stated that during the previous case's proceedings, the judge had called him a "troublemaker" and treated him rudely in open court. 1 CP at 176. O'Hagan stated that based on that incident, he did not have confidence in the judge's ability to treat him with honesty or fairness. The judge stated on the record that he reviewed the record of the prior proceedings and he denied the validity of O'Hagan's allegations. Nothing in our record demonstrates any actual prejudice.

Because the affidavit of prejudice against Judge Brown failed to show actual prejudice against O'Hagan, the judge properly denied the affidavit of prejudice.

III. APPEARANCE OF FAIRNESS

O'Hagan seems to also argue that the judge was biased against him, and thus, violated the appearance of fairness doctrine by presiding over the case.[7] In his assignments of error, O'Hagan makes numerous allegations against Judge Brown related to the alleged bias.[8]

The Code of Judicial Conduct (CJC) provides that a judge must disqualify himself or herself "in any proceeding in which the judge's impartiality might reasonably be questioned." CJC

---

[7] Again, we need not consider this issue because O'Hagan did not provide any substantive argument or citation to legal authority to support his argument. *Fahey*, 164 Wn. App. at 59. However, we choose to consider the issue.

[8] O'Hagan also assigns error to the Pacific County Court Administrator's failure to "follow proper procedures" by not appointing the case "to a fair and impartial judge." Br. of Appellant at 2. He argues that the county administrators and judges "schemed" from the moment the case was filed to "cover up the criminal frauds involved . . . [with the cases related to] the former Kenyon Kelley property." Br. of Appellant at 9.

2.11(A). This includes when a judge has "a personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge of facts that are in dispute in the proceeding." CJC 2.11(A)(1). In determining whether recusal is warranted, actual prejudice need not be proven. A mere suspicion of partiality may be enough. *Sherman v. State*, 128 Wn.2d 164, 205, 905 P.2d 355 (1995). The question under the appearance of fairness doctrine is whether a reasonably prudent, disinterested observer would conclude that the parties received a fair, impartial, and neutral hearing. *State v. Gamble*, 168 Wn.2d 161, 187, 225 P.3d 973 (2010). To succeed in an appearance of fairness claim, a party must show evidence of a judge's actual or potential bias. *Gamble*, 168 Wn.2d at 187-88.

The trial court is presumed to have properly discharged its official duties without bias or prejudice. *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 692, 101 P.3d 1 (2004). "The party seeking to overcome that presumption must provide specific facts establishing bias." *Davis*, 152 Wn.2d at 692. "Judicial rulings alone almost never constitute a valid showing of bias." *Davis*, 152 Wn.2d at 692.

Here, O'Hagan's only clear allegation of prejudice or bias involves the incident where the judge presided over O'Hagan's son's criminal case and allegedly was rude to O'Hagan. O'Hagan argues that in his son's case, the judge made rude statements and "glared" at him. Br. of Appellant at 11. O'Hagan also argues that because the judge ruled that O'Hagan's court filings would be removed from the court record, he was attempting to tamper with the record and further other judicial officers' "fraud and theft schemes." Br. of Appellant at 15. Because O'Hagan fails to show evidence of the judge's actual or potential bias, we conclude that the judge did not violate the appearance of fairness doctrine.

48830-2-II

IV.   VENUE

O'Hagan argues that the Pacific County administrator changed the venue of the case without his motion or consent.[9] O'Hagan argues that proper venue and jurisdiction were ignored "out of malice and vindictiveness." Br. of Appellant at 9-10.

We do "not consider conclusory arguments that are unsupported by citation to authority." *Brownfield v. City of Yakima*, 178 Wn. App. 850, 876, 316 P.3d 520 (2014). "Passing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration." *Brownfield*, 178 Wn. App. at 876. Because O'Hagan only argues venue in passing and without citation to legal authority, we do not consider the issue further. *Brownfield*, 178 Wn. App. at 876; RAP 10.3(a)(6).

V.   ATTORNEY FEES

JDH requests an award of reasonable attorney fees and costs on appeal pursuant to RCW 4.84.185 and CR 11 because O'Hagan's appeal is not well grounded in fact or supported by law and is made in bad faith. JDH also discussed our inherent authority to impose sanctions, but JDH did not clearly request that we impose sanctions on O'Hagan.

RAP 18.1(a) provides that if "applicable law grants to a party the right to recover reasonable attorney fees or expenses on review before either the Court of Appeals or Supreme Court, the party must request the fees or expenses." The party must devote a section of the brief to its request for attorney fees and costs. RAP 18.1(b). The request must include argument and citation to authority to advise the court of the appropriate grounds for an award of attorney fees and costs. *Osborne v. Seymour*, 164 Wn. App. 820, 866, 265 P.3d 917 (2011).

---

[9] It is unclear to where O'Hagan alleges venue was changed because the case was heard in Pacific County Superior Court where O'Hagan filed it.

10

RAP 18.9(a) states that we may sanction a party for filing a frivolous appeal. A frivolous appeal fails to raise meritorious or debatable issues on which reasonable minds might differ and no reasonable possibility of reversal exists. *Alexander v. Sanford*, 181 Wn. App. 135, 184-85, 325 P.3d 341, *review granted*, 181 Wn.2d 1022 (2014).

Here, O'Hagan did not set forth any debatable issue related to JDH. None of the issues O'Hagan raises on appeal relate to JDH's summary judgment motion. As discussed in the analysis section, O'Hagan failed to comply with the RAPs. Any issues we considered were frivolous. Therefore, we award JDH reasonable attorney fees for responding to this appeal.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Melnick, J.

We concur:

_____
Bjorgen, C.J.

_____
Sutton, J.