IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Marriage of:<br><br>LARA BROOKE SEEFELDT,<br><br>                       Petitioner†,<br><br>       and<br><br>ALBERT WHITNEY COBURN,<br><br>                       Appellant,<br><br>       v.<br><br>DEPARTMENT OF SOCIAL AND<br>HEALTH SERVICES,<br><br>                     Respondent. | No. 83557-2-I<br><br>DIVISION ONE<br><br><br>UNPUBLISHED OPINION |

DÍAZ, J. — Although Albert Coburn was not in arrears of his monthly child support obligations, the Department of Social and Health Services (DSHS) Division of Child Support (DCS) began garnishing his wages after Lara Seefeldt requested support enforcement services for his share of uninsured medical expenses. Coburn moved in superior court pro se to stop the garnishment and, as he characterized his motion, to enforce a provision of his child support order, which required Seefeldt to first obtain a wage assignment order if she (and not DCS) sought to garnish his wages. A court

_____

† Lara Seefeldt is not a party to this appeal.

Citations and pin cites are based on the Westlaw online version of the cited material.

commissioner denied Coburn's requests and sanctioned him for filing a frivolous motion. Coburn moved for revision. The superior court upheld the commissioner's denial but struck the sanction. Coburn now appeals the order of denial. We affirm.

## I. FACTS

Coburn and Seefeldt share a child together. Pursuant to a March 2018 child support order, Coburn was ordered to make a monthly transfer payment directly to Seefeldt and to pay his proportional share of uninsured medical and other expenses.

The child support order stated DCS was not enforcing Coburn's support obligation and would delay income withholding (garnishment) until a payment becomes past due because he had no history of late payments. But the order also indicated:

DCS or the person owed support can collect the support owed from the wages, earnings, assets or benefits of the parent who owes support, and can enforce liens against real or personal property as allowed by any state's child support laws without notice to the parent who owes the support.

*If this order is not being enforced by DCS and the person owed support wants to have support paid directly from the employer, the person owed support must ask the court to sign a separate wage assignment order requiring the employer to withhold wages and make payments. (Chapter 26.18 RCW.)*[1]

Coburn made his transfer payments timely but Seefeldt asked DCS to "handle all support payments" because Coburn allegedly was not paying his "co-pays" for their child's "medical appointments and therapy." In response, DCS opened a nonassistance support enforcement case against Coburn.

On March 7, 2019, DCS served Coburn with a notice of support debt and demand for payment, stating that he owed $2,320.08 for current support and $20,880.80 for back

---

[1] Bold face omitted.

support. The notice instructed Coburn, "If you want to contest the validity or administrative enforcement of your support order, contact your Support Enforcement Officer (SEO) . . . within 20 days after you received this notice." Coburn received the notice on March 11, 2019, but did not contact DCS or his SEO within 20 days to object to the enforcement action. Instead, he filed a motion for clarification of child support debt asking the superior court to declare that he was not in arrears. Seefeldt filed a response saying that she never alleged Coburn was in arrears for child support, she made his payment history clear to DCS, and she should be awarded attorney fees for responding to a frivolous motion.[2]

On March 25, 2019, DCS sent Seefeldt a debt adjustment notice, explaining that Coburn did not owe any back child support payments, reducing the debt by $20,880.80, but indicating that "DCS will continue to enforce your support order."

In its April 12, 2019 order on Coburn's motion for clarification, the superior court found that, due to a misunderstanding, DCS "mistakenly believed that Mr. Coburn owed $20,880.80 in back child support[,]" but "[t]here is no back child support owing on this case." The court then granted Coburn's motion and ordered: (1) "No back child support is owing in this case," (2) "[Coburn] shall make/arrange to make child support payments to DCS to avoid this problem in the future," and (3) "No attorney fees are ordered at this time, but if [Coburn] again sets an unnecessary court hearing, fees will be ordered. He shall make every effort to resolve issues with opposing counsel out of court." Given the clarity of this order, any additional oral statements of the trial court are not relevant to this matter.

---

[2] DCS was not a party at this time and did not file a response to Coburn's March 2019 motion.

On April 19, 2019, DCS sent its first payroll deduction notice to Coburn's employer, which was limited to the current amount of child support owed. Coburn continued to voluntarily and timely pay child support until DCS received funds from his employer in June 2019.

In December 2019, Seefeldt informed DCS that she wanted Coburn's child support obligation to remain in full enforcement status but was willing to sign an agreement to terminate withholding. Under that agreement DCS would release its garnishment and allow Coburn to pay DCS directly but cautioned, in pertinent part, if Coburn failed to make a support payment, DCS would "take income withholding action immediately" and would "take this action without further notice to" him. Coburn was unwilling to sign this agreement.

Nearly two years later, in October 2021, Coburn filed a motion to enforce his child support order primarily alleging that "Federal and State laws ONLY allow for DCS to implement income withholding when a support order has language supporting it."[3] He requested an order instructing DCS to stop enforcing his child support obligation through a wage garnishment and allow him to make all payments voluntarily. DCS responded, claiming that after it had served Coburn with administrative notice prior to taking enforcement action, it had authority to garnish his wages regardless of any amount of arrearage, but was willing to allow him to pay child support voluntarily conditioned on Seefeldt's agreement.[4]

---

[3] The record is silent on any pertinent events transpiring between December 2019 and October 2021.

[4] Seefeldt did not file a response to Coburn's motion to enforce.

In November 2021, a court commissioner denied Coburn's motion, announcing that Seefeldt was "allowed to ask for support enforcement to collect" child support and that his "way out of that was to sign the agreement to terminate withholding." The commissioner then entered an order ruling that "DCS has statutory authority to garnish Mr. Coburn's income under RCW 26.23.060 regardless of whether he is in arrears" and "as permitted by federal and state law, without first obtaining a court order." The commissioner imposed a $500 sanction against Coburn for filing a frivolous motion.

Coburn moved to revise the commissioner's order. On December 2, 2021, a superior court judge affirmed the commissioner, ruling that DCS has authority to take enforcement action and garnish Coburn's wages without first obtaining a court order. However, the superior court disagreed that Coburn's motion was frivolous and struck the $500 sanction.

Coburn appeals pro se.[5]

## II. ANALYSIS

Coburn claims, as he did below, in pertinent part, that DCS lacked authority to enforce his child support obligation through wage garnishment because (a) it did not first modify his court order, (b) it "[r]euse[d]" the notice of support debt, and/or (c) it did so without considering whether he was actually in arrears. Thus, he contends the commissioner and superior court judge erred when they denied his motion to stop the wage garnishment. We disagree.

---

[5] Pro se litigants on appeal are held to the same standards as attorneys and are bound by the same rules of procedure and substantive law. In re Marriage of Olson, 69 Wn. App. 621, 626, 850 P.2d 527 (1993).

A.      Standard of Review

A superior court judge reviews a commissioner's ruling de novo based on the evidence and the issues presented to the commissioner.    RCW 26.12.215; RCW 2.24.050; In re Marriage of Moody, 137 Wn.2d 979, 992-93, 976 P.2d 1240 (1999).  Once the superior court makes a decision on revision, the appeal is taken from the superior court's decision, not the commissioner's.  In re Estate of Wright, 147 Wn. App. 674, 680, 196 P.3d 1075 (2008).

The superior court interpreted federal and state law to rule that DCS has authority to garnish Coburn's wages, regardless of Coburn's procedural complaints.   The interpretation of a statute is a question of law we review de novo.  In re Parentage of J.M.K., 155 Wn.2d 374, 386, 119 P.3d 840 (2005).

B.      Federal and State Law Authorize DCS to Enforce Child Support Obligations in the Manner It Did

In order to receive federal funding, states are required to make nonassistance child support enforcement services available.  42 U.S.C. § 654(4)(A)(ii) (requiring state plans for child and spousal support to provide child support services to "any other child, if an individual applies for such services with respect to the child").  In Washington, DCS is authorized to "accept a request for support enforcement services on behalf of persons who are not recipients of public assistance and [] take appropriate action to establish or enforce support obligations against the parent or other persons owing a duty to pay moneys."   RCW 74.20.040(2).   A person can apply for nonassistance support enforcement services if they are the custodial parent.   WAC 388-14A-2010.

Here, Seefeldt applied for such services.  In response, DCS was authorized to enforce Coburn's child support obligation through garnishment without a court order.

- 6 -

Federal child support enforcement law directs each state to have income withholding procedures in place to collect child support, 42 U.S.C. § 666(a)(1)(A), and mandates that "withholding *must* occur without the need for any amendment to the support order involved or for *any further action* . . . by the court or other entity which issued such order." 42 U.S.C. § 666(b)(2)[6]. Such withholding must occur "without regard to whether there is an arrearage . . . [on] the date . . . the custodial parent requests that such withholding begin . . . or such earlier date as the State may select." 42 U.S.C. § 666(b)(3)(B)(ii),(iii).

In compliance with federal law, RCW 26.23.060(1) permits DCS to issue a notice of payroll deduction if authorized by a court order *or after service of a notice containing an income-withholding provision*:

> (1) The division of child support may issue an income withholding order:
>     (a) As authorized by a support order that contains a notice clearly stating that child support may be collected by withholding from earnings, wages, or benefits without further notice to the obligated parent; or
>     (b) After service of a notice containing an income-withholding provision under this chapter or chapter 74.20A RCW.

Here, DCS served Coburn with a notice of support debt and demand for payment in March 2019. This notice contained an income-withholding provision advising Coburn that he was required to make all future payments to the Washington State Registry through a payroll deduction or through the internet by deducting support payments from a checking or savings account. Further, the notice stated DCS was allowed to "take collection actions even if you are not behind in support payments" pursuant to "Chapters 26.18, 26.23, and 74.20A RCW" and explained that in an effort to collect current support, DCS may, "at any time without further notice[,]" send Coburn's employer an order to

---

[6] Emphases added.

withhold his wages. This notice met the requirements of RCW 26.23.060(1)(b), and Coburn had 20 days to contest it.

Once 20 days elapsed after service of this notice, DCS was statutorily authorized to garnish Coburn's wages without modifying his child support order, regardless of whether he was behind in his support payments. The procedures Coburn complains were not followed are not required under federal and state law before DCS may garnish wages. The superior court did not err by denying Coburn's motion to stop the garnishment.[7]

C.    The Child Support Order Authorizes the Same

Contrary to Coburn's assertion, the language of his child support order does not require DCS to seek a modification of that order or take any other action prior to garnishing his wages to satisfy its nonassistance enforcement service obligations.

Although the child support order contains language directing "the person owed support" to "ask the court to sign a separate wage assignment order requiring the employer to withhold wages and make payments," this is so only when the child support "order is not being enforced by DCS." When DCS is not enforcing an order, a parent owed support may move for a wage assignment order if the parent owing support is "more than fifteen days past due in child support . . . payments in an amount equal to or greater than the obligation payable for one month." RCW 26.18.070(1)(b). A court shall issue a wage assignment order upon receipt of a motion that complies with RCW 26.18.070. RCW 26.18.080(1). But here, the wage assignment procedures set forth in chapter 26.18

---

[7] In its briefing, DCS says that it remains willing to release its garnishment and permit Coburn to pay voluntarily "if he and Seefeldt were to agree and sign an Agreement to Terminate Income Withholding."

RCW are not implicated because Seefeldt asked DCS for nonassistance support enforcement services.

Because DCS is authorized to garnish Coburn's wages without a court order, the superior court did not err in denying Coburn's request to "enforce" the provisions of his child support order.

D.     Coburn's Other Claims Fail

Coburn also says DCS deprived him of his Fourteenth Amendment rights to due process when it failed to give him adequate notice and an opportunity to be heard prior to garnishing his wages.  Due process under the Fourteenth Amendment requires " 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' " In re Marriage of McLean, 132 Wn.2d 301, 308, 937 P.2d 602 (1997) (quoting Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S. Ct. 652, 94 L. Ed. 865 (1950)).  The record here shows that Coburn received ample notice of DCS's intent to withhold his wages and gave him an opportunity to contest the notice. Therefore, we reject his due process claim.

Lastly, Coburn asserts it was improper for DCS to "[r]epresent" Seefeldt (or otherwise give her an "advantage" in the divorce proceedings) and for the commissioner to "accuse[ ]" him of filing a frivolous motion.  However, we need not address this issue as there is no factual or legal basis supporting Coburn's claims about DCS and we review only the superior court's order, which in this case determined that Coburn's motion was not frivolous.

We affirm the superior court's order of denial.

_____
Díaz, J.


WE CONCUR:

_____   _____
Birk, J.                          Chung, J.