# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| RAJNINDER K. JUTLA, MD, | No. 60086-2-II |
| Appellant, | |
| v. | |
| WASHINGTON MEDICAL COMMISSION, DEPARTMENT OF HEALTH, | UNPUBLISHED OPINION |
| Respondent. | |

VELJACIC, J. — Rajninder Jutla seeks judicial review of the Washington Medical Commission's (Commission) decision to revoke her medical license. Jutla argues the Commission erred in delaying to provide the administrative record. She alleges the health law judge (HLJ) erred in conducting the hearing virtually. Further, she argues the Commission erred in relying on the Acumen Assessment instead of her expert witnesses and erred in denying her motion for reconsideration.[1, 2] Because Jutla fails to comply with RAP 10.3(a)(6) or otherwise waives her arguments, we affirm.

---

[1] Jutla also alleges numerous violations of her constitutional rights, which we address below.

[2] In furtherance of her requests for reversal, Jutla also mentions ongoing litigation against the Commission for defamation regarding its publication of her medical diagnosis on its website. We decline to consider arguments regarding this separate litigation.

FACTS[3]

I.    BACKGROUND

In 2007, Jutla was issued a license to practice as a surgeon and physician in Washington. In June 2020, the Commission summarily suspended Jutla's license to practice medicine in Washington. The Commission based its decision on the March 2020 Oregon Medical Board's default final order that revoked Jutla's license to practice medicine in Oregon.[4] After Jutla's license was suspended in Washington, she continued to practice medicine in violation of the summary suspension orders by seeing patients, writing prescriptions, and submitting insurance claims.

In April 2021, the Commission entered a final order indefinitely suspending Jutla's license until the Commission approved an "independent practice monitor" for Jutla. Admin. Rec. (AR) at 513. Jutla obtained a practice monitor, and her license was reinstated with conditions in November 2021. However, in October 2021, the Commission entered an amended statement of charges against Jutla, alleging that she committed unprofessional conduct in violation of RCW 18,130.180(1), (7), (9), (13), and (22). The amended charges were based, in part, on her continued practice of medicine while her license was suspended and her misrepresentations regarding where she attended medical school, her class rank, and when she stopped practicing medicine while her license was suspended.

---

[3] Much of the information in this section is drawn from the corrected stipulated findings of fact, conclusions of law, and agreed order entered by the Commission and Jutla. The parties stipulated that the document should be considered as an *Alford* plea. *See North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

[4] In 2019, Jutla was also indicted in federal court and charged with 2 counts of conspiracy to pay and receive kickbacks, 7 counts of solicitation and receipt of kickbacks, and 11 counts of health care fraud. The record does not contain the outcome of these proceedings.

In February 2022, Jutla waived a hearing on the amended charges and entered into an agreed order with the Commission. This corrected stipulated findings of fact, conclusions of law, and agreed order stated that the order "should be construed as an *Alford* plea, wherein [Jutla] does not admit to the Amended Statement of Charges, but acknowledges that at a hearing before the Commission the State of Washington would present sufficient evidence to prevail on the charges." AR at 512. The order concluded that Jutla "committed unprofessional conduct in violation of RCW18.130.180(1), (7), (9), (13), and (22)," which provided grounds for imposing sanctions against Jutla. AR at 516.

Based on this, the parties agreed Jutla would complete a compliance orientation, her license would be placed under additional oversight, and she would "undergo a multidisciplinary forensic assessment by Acumen Assessments (Acumen) to determine whether [Jutla] is fit to practice as a physician." AR at 517. The order stated that "[i]f [Jutla] is found to be unfit to practice, [Jutla] shall undertake all treatment recommendations necessary to rehabilitate her practice. . . . Any treatment or professional monitoring recommendations made as a result of this assessment may be incorporated, into an Amended Agreed Order in this case." AR at 517. The order also stated, "[Jutla] acknowledges that she will not be allowed to dispute the reports or recommendations by ACUMEN or third-party evaluators." AR at 518. In addressing possible sanctions based on the recommendation of the assessment, the order stated, "[t]he Commission does not know without the assistance of the evaluation whether or how [Jutla] can be rehabilitated to practice in a manner that protects the public." AR at 520.

II.     ACUMEN ASSESSMENT

On February 8-10, Jutla was evaluated at Acumen by a panel of five licensed psychologists and one board certified consulting psychiatrist. In addition to clinical interviews with the panel, Jutla took standardized tests that measured mental and emotional functioning, personality style, perception, and emotional regulation.

After assessing Jutla, the panel concluded Jutla had a "personality-based pathology" that was "consistent with a Narcissistic Personality Disorder" as well as "Antisocial and Histrionic Personality Traits." AR at 549, 552. The panel concluded that "Jutla's lengthy history of complaints of unprofessional conduct, concerning interactions with regulatory authorities, and association with disreputable endeavors can be attributed to this character pathology." AR at 552. The panel also concluded that Jutla's prognosis for remediation was poor based on the "relatively immutable nature of such personality pathology and its related denial of ethical culpability in the conduct being investigated and potentially prosecuted." AR at 552.

Accordingly, the panel opined that Jutla was "unfit to practice medicine with reasonable skill and safety." AR at 552. The panel recommended that Jutla disengage from the practice of medicine and refrain from practice until she be "deemed ethically and technically fit to practice medicine with reasonable skill, safety, and fully informed and accountable regulatory compliance." AR at 552. The panel recommended that in order to be deemed fit to practice, Jutla would need to "demonstrate consistent adherence" to several professional qualities, including honesty, trustworthiness, truthfulness, integrity, love, kindness, prudence, humility, open-mindedness, an ability to respond to rules and regulations in a dignified manner, and an ability to "internalize a sense of duty, moral priority, and good character through actual deeds." AR at 553-54.

III.   ADDITIONAL CHARGES AND PREHEARING CONFERENCE

Based on this assessment, in July 2022, the Commission issued a statement of charges alleging Jutla was "unable to practice with reasonable skill and safety pursuant to RCW 18.130.170(1)."  AR at 7.  Also in July, the Commission obtained an ex parte order summarily suspending Jutla's license to practice as a physician and surgeon.

In December, at a telephonic prehearing conference, the HLJ stated that the hearing would "be conducted by video conference.  I'll be emailing the parties with a link to join the hearing.  It will be on Microsoft Teams Meeting format."  AR at 1293.  Jutla confirmed her e-mail address and made no objection regarding the intended format of the hearing.  After this prehearing conference, the HLJ issued an order that also confirmed that the hearing would be conducted via video conference.

In January 2023, at the beginning of the hearing, the HLJ asked, "Are the parties ready to proceed with the hearing today? . . .  I'm just checking in to see if the hearing is a go, basically." AR at 625.  Jutla responded, "Yeah."  AR at 625.  The HLJ also stated the following:

> [T]his is a videoconference, and some of us may be new to participating in a hearing in this format.  If you experience any technical difficulties that interfere with your ability to participate in the hearing and you're required for this hearing, bring it to my attention, if you can.  And if you get disconnected from the hearing, please attempt to rejoin.  If we notice that anybody has disconnected, we will pause the proceedings until they can get back online.

AR at 626-27.

IV.   ADMINISTRATIVE HEARING

Dr. Michael Seely, who was the lead evaluator of the panel that assessed Jutla at Acumen, testified at the hearing.  Dr. Seely testified that the panel concluded Jutla met eight of the nine criteria indicating she had narcissistic personality disorder.  Regarding the panel's opinion that Jutla had a poor prognosis for remediation, Seely stated that "[i]t would take a significant amount

of work and a very intensive process to make any kind of change, and that change would have to start with an acceptance of responsibility for the problems that someone is facing." AR at 757-58. Seely also stated that the panel "did not see anything during the evaluation that would indicate that [Jutla] was open to change. Denial of problems featured very prominently. And I'm not seeing anything since the evaluation of Dr. Jutla that would indicate that anything is different at the present." AR at 758.

Jutla's witness, John M. Greene, M.D., testified that, after a four-hour examination, he concluded Jutla did not suffer from narcissistic personality disorder. James Bramson, PsyD. also concluded that, based on the testing data, Jutla did not suffer from narcissistic personality disorder.

V.    COMMISSION'S FINAL ORDER

In July 2023, the Commission found Seely, Greene, and Bramson to all be credible, but gave more weight to Seely's testimony based on his credentials, presentation, and the fact that the panel at Acumen had more thorough background information on Jutla. The Commission found Jutla not credible and that "[h]er testimony and behavior over the course of the hearing showed traits outlined in the Acumen report." AR at 445. The Commission found that

> [Jutla] has a demonstrated history of not following rules, including not complying with Medical Board and Commission orders. [Jutla] makes excuses and blames external forces for her lack of compliance, and she lacks self-reflection and accountability. As a result, the Commission finds there is no rehabilitation plan that will ensure [Jutla] is able to regain the ability to practice with reasonable skill and safety.

AR at 445-46. The Commission concluded that it was proven by clear and convincing evidence that Jutla could not practice with reasonable skill and safety and could never regain the ability to do so. The Commission permanently revoked Jutla's license to practice as a physician and surgeon in Washington.

Jutla filed a petition for reconsideration, asking the Commission to reconsider its decision in light of a fitness for duty evaluation conducted by the University of California, San Diego, PACE Program that "contradict[ed] . . . the key evidence presented through the Acumen evaluation." AR at 4557. The Commission denied Jutla's petition because she failed to show any "specific errors of fact or law" that would warrant granting reconsideration. AR at 472.

VI.    JUDICIAL REVIEW

In September, Jutla filed a petition for judicial review in the Thurston County Superior court. On October 20, the trial court ordered the Commission/Department of Health to prepare and transmit the underlying administrative record from the agency to the superior court without assigning fees or costs to Jutla. As of January 2024, the agency still had not provided the administrative record.

On January 27, Jutla's counsel withdrew "upon the advice of ethics counsel" and "under applicable ethics rules."[5] AR at 115.

In June, the trial court certified Jutla's case to this court for direct review pursuant to RCW 34.05.518.

---

[5] Counsel also pointed to the Commission's failure to provide the agency record, the trial/hearing date not being scheduled, and the fact that no action had been taken in response to Jutla's request that her petition for judicial review be transferred to the Court of Appeals as explanation for withdrawal.

ANALYSIS

I.    COMMISSION'S DELAY IN PROVIDING ADMINISTRATIVE RECORD

Jutla argues the Commission erred in intentionally delaying in providing the complete agency record,[6] which prejudiced her because her counsel had to withdraw during the delay. Because Jutla points to no authority suggesting she is entitled to affirmative relief based on an agency's delay in providing the administrative record, we disagree.

A.    Legal Principles

RCW 34.05.566(1) provides that "[w]ithin thirty days after service of the petition for judicial review, or within further time allowed by the court or by other provision of law, the agency shall transmit to the court the original or a certified copy of the agency record for judicial review of the agency action."

An agency's responsibility to transmit the agency record to the court within 30 days is illustrated in *Stevens v. Dep't of Health, Nursing Care Quality Assurance Comm'n*, 30 Wn. App. 2d 434, 435, 545 P.3d 380 (2024). There, the Department of Health, Nursing Care Quality Assurance Commission (Department) suspended Stevens's nursing license for unprofessional conduct. *Id.* at 435. Stevens petitioned for judicial review, and the Department moved for dismissal for want of prosecution which the trial court granted. *Id.* at 438. On appeal, this court held that dismissal was improper because the Department was responsible for the delay in

---

[6] Jutla mentions numerous documents in her brief that she claims are missing from the administrative record the agency provided including, for example, the "Stipulated Order for case M2021-178." Br. of Appellant at 6. However, this document is in the record. *See* AR at 511. Regarding other documents she claims are missing, it appears from the record that the trial court had denied Jutla's motion to add additional documents to the record. *See* AR (case file) at 246. Without more, we cannot address Jutla's claim that the record is somehow inadequate.

Stevens's petition for judicial review being heard because the Department itself failed to timely provide the administrative record. *Id.* at 446-48, 450.

B.      Analysis

Here, the Commission failed to comply with RCW 34.05.566(1) in providing the agency record within 30 days of service of the petition for judicial review. The cause of the delay is unclear from the record, however, Jutla provides no argument or evidence to support her claim that the Commission's delay was intentional. Further, it is unclear when the record was actually provided.

Jutla relies on *Stevens* for the proposition that the Commission's delay in providing a transcript to the court resulted in "the case for prosecution against the [p]laintiff [being] dismissed." Br. of Appellant at 15. But Jutla's reliance is misplaced. As explained above, in *Stevens*, the court held that the Department could not benefit from its own delay in failing to timely provide the administrative record by then seeking dismissal of the petitioner's claim based on a lack of prosecution. *Stevens*, 30 Wn. App. 2d at 446-48, 450. That is not the case here, as the Commission is not seeking dismissal based on any delay it caused.

Despite the Commission's failure to comply with RCW 34.05.566(1) in providing the agency record within 30 days of service of the petition for judicial review, Jutla provides no authority suggesting that she is therefore entitled to affirmative relief from the Commission's decision to revoke her license. "Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none." *DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 126, 372 P.2d 193 (1962).

II.     VIRTUAL HEARING

Jutla argues the HLJ erred in conducting the hearing virtually.  We disagree.

A.      Legal Principles

In adjudicative proceedings under the Administrative Procedure Act, RCW 34.05.449(3) provides that, at the discretion of the presiding officer, and "where the rights of the parties will not be prejudiced thereby, all or part of the hearing may be conducted by telephone, television, or other electronic means."

B.      Analysis

Here, the HLJ stated at the prehearing conference that the hearing would be conducted by video conference, and Jutla made no objection.  Jutla attended the hearing virtually and stated "[y]eah" when asked if she was ready to proceed.  AR at 625.  Because Jutla agreed to continue with the hearing virtually, she waives her argument that it was erroneous for the hearing to be conducted in that format.[7]  Despite any technical difficulties that may have occurred during the hearing, Jutla points to nothing in the record that suggests her rights were prejudiced by the virtual setting or that she was unable to effectively participate.

Jutla relies on a blog post and Massachusetts case, for which she provides no citation, to argue that virtual hearings result in negative outcomes.  Even if that were true, this does not change the fact that Jutla agreed to participate in the virtual hearing and never lodged an objection to the hearing being conducted virtually.  Accordingly, she failed to preserve her claimed error.  *See* RAP

---

[7] Jutla suggests in her briefing that she was "unfamiliar with protocols and conduct" and did not know she could object to statements made during the hearing.  Br. of Appellant at 21.  We note that although Jutla proceeds pro se, we hold a pro se litigant to the same standard as an attorney. *In re Marriage of Olson*, 69 Wn. App. 621, 626, 850 P.2d 527 (1993).

2.5(a) (providing that "[t]he appellate court may refuse to review any claim of error which was not raised in the trial court").

III.    REMAINING ARGUMENTS ABANDONED DUE TO INADEQUATE BRIEFING

In her opening brief, Jutla also alleges the Commission's decision to revoke her license based on her diagnosed personality disorder was cruel and unusual punishment which violated the First and Eighth amendments of the United States Constitution. In her reply brief, she argues that the Commission's decision violated her Fifth and Fourteenth Amendment rights. She summarily asserts that these rights were violated but provides no argument or authority to support these claims. As our Supreme Court has explained, "'naked castings into the constitutional sea are not sufficient to command judicial consideration and discussion.'" *In re Pers. Restraint of Rhem*, 188 Wn.2d 321, 328, 394 P.3d 367 (2017) (internal quotation marks omitted) (quoting *In re Pers. Restraint of Williams*, 111 Wn.2d 353, 365, 759 P.2d 436 (1988)). Accordingly, we do not address these claims.

Jutla also alleges the Commission erred in relying on the Acumen Assessment instead of her expert witnesses and erred in denying her motion for reconsideration. For the reasons set forth below, we decline to consider these arguments.

A.    Legal Principles

Generally, appellate courts "decide a case only on the basis of issues set forth by the parties in their briefs." RAP 12.1. The Rules of Appellate Procedure govern briefs filed in this court, and they dictate requirements regarding the contents of a party's submission. RAP 10.3 (explaining the contents required in a brief). In the "*argument*" section of an opening brief, a party should include "citations to legal authority and references to relevant parts of the record." RAP 10.3(a)(6).

We will not consider assignments of error in an opening brief that are unsupported by sufficient argument and citation to authority. *See Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992); *Holland v. City of Tacoma*, 90 Wn. App. 533, 538, 954 P.2d 290 (1998) ("Passing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration.").

B.      Analysis

Jutla fails to support her arguments with sufficient legal authority and citation to the record. In Jutla's opening brief, the argument section pertaining to the Commission's reliance on the Acumen Assessment and the HLJ's denial of her motion for reconsideration contain three citations to the record in 13 pages.[8]   Further, she cites no legal authority to support these arguments. Because Jutla fails to comply with RAP 10.3(a)(6), these arguments are abandoned on appeal.[9]

IV.     ATTORNEY FEES

In Jutla's opening brief, she requests attorney fees and costs. RAP 18.1 allows for an award of attorney fees if authorized by applicable law. Jutla, however, provides no applicable law showing she is entitled to reimbursement for attorney fees or costs.[10]   Accordingly, we deny her request for attorney fees and costs.

---

[8]The entire argument section in Jutla's opening brief contains eight citations to the record.

[9] Even if we were to consider Jutla's argument on the merits regarding the Commission's reliance on the Acumen Assessment, we note that Jutla already waived this argument by signing the corrected stipulated findings of fact, conclusions of law, and agreed order. That order expressly stated that Jutla "acknowledges that she will not be allowed to dispute the reports or recommendations by ACUMEN." AR at 518. By agreeing to be bound by Acumen's recommendation, she cannot now dispute it.

[10] Because Jutla is pro se at this stage of the proceedings, it appears that she is requesting fees for counsel's work during the administrative proceedings.

CONCLUSION

Accordingly, we affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Veljacic, J.

We concur:

Cruser, C.J.

Price, J.